# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE MCELROY, on behalf of himself and all others similarly situated, | ) ) ) ) | CASE NO. 5:22-cv-287 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| FRESH MARK, INC., | ) ) ) | |
| DEFENDANT. | ) | |

This matter is before the Court on the parties' briefs, requested by the Court, addressing the impact of *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). (*See* Doc. No. 40, Plaintiffs' Brief; Doc. No. 39, Defendant's Brief; Doc. No. 42, Defendant's Response to Plaintiffs' Brief; and Doc. No. 43, Plaintiffs' Response to Defendant's Brief.) The Court has considered the parties' respective positions in light of *Clark* and now issues this order regarding next steps in this case.

## I. Procedural Background[1]

On February 22, 2022, plaintiff Antoine McElroy ("McElroy" or "plaintiff") filed this action under the Fair Labor Standards Act against Fresh Mark, Inc. ("Fresh Mark" or "defendant") on behalf of himself and others similarly situated.[2] At that same time, eight other people filed

---

[1] Any page number references to the record herein are to the consecutive page numbers applied to each individual document by the electronic filing system, a citation practice recently adopted by this Court despite a different directive in the Initial Standing Order for this case.

[2] McElroy also included a Rule 23 class action claim in his complaint.

consents to join the litigation (*see* Doc. Nos. 4-1 through 4-6; 4-8 through 4-9); a ninth person

joined on April 12, 2022 (*see* Doc. No. 12).

The complaint alleges that Fresh Mark is a nationwide supplier of various meat items and

operates food processing, production, and distribution facilities in Ohio. (Doc. No. 1, Complaint

¶ 13.) McElroy was employed by Fresh Mark from May 2006 to July 2021 as a machine operator

at defendant's Canton, Ohio facility; he was paid on an hourly basis. (*Id.* ¶¶ 14, 18.) McElroy

alleges in relevant part as follows:

> 26. Plaintiff and other similarly situated production employees were not
> paid for time spent a) changing into and out of their personal protective equipment,
> including, but not limited to, a smock, gloves, boots, safety glasses, earplugs, and/or
> a hairnet; b) washing their hands; c) performing temperature checks; d) walking to
> and from their assigned areas of the production floor; and e) performing their
> production work prior to their scheduled shift start times. The preshift work
> activities are principal activities that starts [sic] the continuous workday of Plaintiff
> and similarly situated production employees.

> 27. Plaintiff and other similarly situated production employees were also
> required to change out of and back into their personal protective equipment during
> their 30-minute meal periods, which reduced their meal periods to 10 or 15 minutes
> per shift.

(*Id.* ¶¶ 26, 27.) As of the filing of the complaint, McElroy wanted to send "opt-in" notices to the

following persons:

> All former and current non-exempt production employees of Fresh Mark, Inc.
> between February 22, 2019 and the present.

(*Id.* ¶ 33.)

On March 23, 2022, Fresh Mark filed its answer to the complaint, which included several

affirmative defenses. (Doc. No. 6, Answer.)

On May 24, 2022, the Court conducted the Case Management Conference and, upon the

parties' joint request, set an expedited schedule for filing and briefing McElroy's motion for

conditional certification; formal discovery was also stayed at that time. On June 17, 2022, McElroy timely filed his motion for conditional certification, expedited opt-in discovery, and court-supervised notice to potential plaintiffs. (Doc. No. 16.) Fresh Mark filed its opposition on July 18, 2022 (Doc. No. 17), and McElroy filed a reply on August 1, 2022 (Doc. No. 18).

On August 29, 2022, the parties filed a joint motion to stay all proceedings and for a referral to mediation. (Doc. No. 19.) In connection with their motion, the parties entered into an agreement to toll the statute of limitations for potential plaintiffs.[3] (*See* Doc. No. 19-1.) The motion to stay was granted on September 1, 2022, "pending completion of mediation," with directions that mediation be completed by December 30, 2022; the pending motion for conditional certification was terminated without prejudice. (Doc. No. 20.)

On January 9, 2023, having heard nothing further from the parties regarding the outcome of their mediation, the Court directed the parties to file a joint status report. (Doc. No. 30.) In response to that order, the Court's law clerk received an email from the mediator, which prompted the Court to extend the deadline for completion of the mediation to February 28, 2023. (Doc. No. 31.) On February 8, 2023, the parties jointly requested a further continuance of the mediation deadline, which was granted, with the mediation report to be filed by March 10, 2023. Another Case Management Conference to set the remaining case management dates was set for June 6, 2023. (Doc. Nos. 32, 33.) No mediation report was filed by the March 10, 2023 deadline or, for that matter, at any time.

---

[3] The tolling agreement stated that the tolling period would begin on August 3, 2022 (the effective date of the agreement) and end the day after this Court lifted the stay. (*See* Doc. No. 19-1, at 2.) The stay was never formally lifted. Fresh Mark's brief selects as the ending date the day that McElroy filed his second motion for conditional certification, that is, March 23, 2023. (*See* Doc. No. 42, at 8.) Although McElroy's post-*Clark* brief acknowledges the tolling agreement, he does not assign an ending date to the tolling period. (*See* Doc. No. 40, at 2.) The precise period of tolling is addressed below in the section on equitable tolling.

On March 23, 2023, McElroy refiled his motion for conditional certification. (Doc. No. 34.) Fresh Mark, on its motion, was granted until May 22, 2023, to oppose plaintiff's motion. On April 7, 2023, Fresh Mark moved to stay briefing on conditional certification because of the Sixth Circuit's recently issued *Clark* decision. The Court granted that motion, canceled the June 6, 2023 Case Management Conference, and ordered the parties to brief *Clark*'s impact on this case. (*See* Non-document Order, dated May 20, 2023.) The parties have completed their briefing.

McElroy argues that *Clark* will impact this case in three ways: (1) there must be application of the new "strong likelihood" standard for Court-facilitated notice to potential plaintiffs; (2) expedited discovery must be permitted to determine who is "similarly situated" for purposes of court-facilitated notice; and (3) equitable tolling of the statute of limitations must be applied. (Doc. No. 40, at 1; *see also* Doc. No. 43, *passim*.)

Fresh Mark does not disagree regarding this threefold impact of *Clark*; but it does challenge McElroy's application of each of the three matters. (Doc. No. 42, *passim*; *see also* Doc. No. 39.) Notably, defendant argues that plaintiff miscites (and thereby reduces) the new standard announced by *Clark*. (Doc. No. 42, at 1.)

The Court agrees that the parties have identified three aspects of litigation under the Fair Labor Standards Act that are affected by the decision in *Clark* and it will address each aspect below.[4]

## II.     The New Legal Standard Under *Clark*

"Under the Fair Labor Standards Act of 1938 (FLSA), plaintiffs may litigate federal minimum-wage and overtime claims on behalf of other 'similarly situated' employees." *Clark*, 68

---

[4] The Court notes, however, that the new legal standard announced by *Clark* has the most impact, as issues surrounding discovery and/or equitable tolling are not new and have always been within this Court's discretion.

F.4th at 1007 (citing 29 U.S.C. § 216(b)). But "[n]o employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought." 29 U.S.C. § 216(b). In other words, other employees may become parties to FLSA litigation brought by the original plaintiff(s) "only if they affirmatively choose to do so[,]" *Clark*, 68 F.4th at 1007, *and* are "similarly situated." *Id.*

In *Hoffman-LaRoche Inc. v. Sperling*, 493 U.S. 165, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989),[5] the Court held that "district courts have discretion, in appropriate cases, to implement [Section 216(b)] . . . by facilitating notice to potential plaintiffs." *Id.* at 169. Previously, courts in this circuit and elsewhere adopted a two-step process under which, at the first step (referred to as "conditional certification"), a district court could "facilitate notice of an FLSA suit to other employees upon a 'modest factual showing' that they are 'similarly situated' to the original plaintiffs." *Clark*, 68 F.4th at 1008 (citation omitted). The standard was uniformly characterized as "fairly lenient" and usually resulted in conditional certification for notice purposes. *Id.* (citation omitted).[6] After completion of merits discovery, if the case had not settled or otherwise been resolved,[7] the district court would undertake the second step of taking "a closer look at whether

---

[5] *Hoffman-LaRoche* was a case brought under the Age Discrimination in Employment Act, 29 U.S.C. § 621, *et seq.*, which expressly incorporates 29 U.S.C. § 216(b).

[6] In this Court's experience, the parties often agreed to a particular "collective" of employees who should be notified. Only if they could not agree was a formal motion to "conditionally certify" filed, briefed, and resolved by the Court. But even when the parties agreed to notice (and no motion was filed), plaintiff often needed to engage in some limited discovery whereby defendant would supply the names and contact information of the employees (past and present) who fit the description of the agreed-upon "collective." Ordinarily, given that information, the parties would also agree on the language of the notice and a schedule for service and opting in, which they would submit to the Court for its approval.

[7] The court in *Clark* noted, correctly based on this Court's experience, that "the decision to send notice of an FLSA suit to other employees is often a dispositive one, in the sense of forcing a defendant to settle—because the issuance of notice can easily expand the plaintiffs' ranks a hundredfold." *Clark*, 68 F.4th at 1007. In the instant case, during one case conference, McElroy's counsel represented that there may be as many as 12,000 potential plaintiffs in this case. (*See* Non-document Minute Order, dated May 24, 2022.) In its brief responding to McElroy's post-*Clark* brief,

those 'other employees' are, in fact, similarly situated to the original plaintiffs." *Id*. (citation omitted). If so, the court would grant "final certification" and the case would "proceed to decision as a collective action." *Id*. (citation omitted).

In *Clark*, the court of appeals "changed the approach courts in the Sixth Circuit must now take in managing . . . actions under the Fair Labor Standards Act (FLSA)." *Stewart v. First Student, Inc.*, No. 1:22-cv-2009, 2023 WL 4414165, at *1 (N.D. Ohio July 7, 2023).[8] After *Clark*, the Sixth Circuit no longer recognizes the concept of "conditional certification" of a "collective" whereby court-facilitated notice is given to potential plaintiffs "upon merely a 'modest showing' or under a 'lenient standard' of similarity." *Clark*, 68 F.4th at 1010. In *Clark*, the court reasoned that the decision to facilitate notice "is analogous to a court's decision whether to grant a preliminary injunction." *Id*. Although acknowledging that three of the four prongs of that standard "are inapposite[,]" the court stated:

> What the notice determination undisputedly shares in common with a preliminary-injunction decision . . . is the requirement that the movant demonstrate to a certain degree of probability that she will prevail on the underlying issue when the court renders its final decision.

*Id*. at 1011. The court "adopt[ed] that part of the preliminary-injunction standard[,]" holding that "for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves." *Id*.

---

Fresh Mark states that the proposed discovery sought by McElroy encompasses "more than 8,000 employees[.]" (Doc. No. 42, at 7.) Either way, the case involves a great many employees!

[8] The Sixth Circuit pointed out that, after *Hoffman-LaRoche*, "most district courts [including this one] have adopted a two-step approach first described in a 1987 decision from the district court in New Jersey." *Clark*, 68 F.4th at 1008 (citing *Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 361 (D.N.J. 1987)). The Sixth Circuit, however, had never formally addressed the merits of the *Lusardi* approach. An interlocutory appeal was accepted in *Clark* because the Fifth Circuit had recently rejected the *Lusardi* holding (as the Sixth Circuit saw it) that "the district court must make a 'final' determination of substantial similarity before facilitating notice of the suit to other employees." *Clark*, 68 F.4th at 1008–09 (citing *Swales v. KLLM Transp. Servs., L.L.C.*, 985 F.3d 430, 434 (5th Cir. 2021)). The court in *Clark* "adopt[ed] neither of those approaches." *Id*. at 1009.

(citation omitted). "That standard requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id*.

Another district court in this circuit very recently issued a decision addressing the new FLSA standard, but in the context of a motion to "decertify" a "collective" that had been "certified" under the former FLSA standard. *See McElwee v. Bryan Cowdery, Inc.*, No. 2:21-cv-1265, 2023 WL 4423880 (S.D. Ohio July 10, 2023). Although *McElwee* was in a different procedural posture than the instant case (having already granted "conditional certification"), it still provides guidance to this Court's deliberations with respect to the new standard announced by *Clark*. The court in *McElwee* noted that "[a]lthough [after *Clark*] there is no 'certification,' the Sixth Circuit retained a two-step process for issuing notice and allowing FLSA claims to proceed as a collective action." *Id*. at *12.

As an initial matter, this Court clarifies that *McElwee*'s reference to "proceed[ing] as a collective" is incorrect after *Clark*. The Sixth Circuit distinguished FLSA actions from class actions, noting that actions under Rule 23 are "representative," unlike in FLSA actions, where persons who opt in (and are "conclusively" determined by the district court to be "similarly situated" to the original plaintiff(s)) "become parties" to the lawsuit ("as opposed to mere recipients of notice") with "'the same status in relation to the claims of the lawsuit as . . . the named plaintiffs.'" *Clark*, 68 F.4th at 1009 (quoting *Canaday v. Anthem Cos., Inc.*, 9 F.4th 392, 402–03 (6th Cir. 2021)). In a Rule 23 action, "the district court certifies the action itself as a class action; whereas in an FLSA action . . . the district court simply adds parties to the suit." *Id*. Because "the term 'certification' has no place in FLSA actions[,]" *Clark* characterizes as "mistaken" any assertion that an FLSA action "'proceeds' as a 'collective' or even a 'representative' action." *Id*.

(citing *Brittmon v. Upreach, LLC*, 285 F. Supp. 3d 1033, 1042 (S.D. Ohio 2018); *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018)).

That said, *McElwee* otherwise correctly describes the post-*Clark* two-step process as follows:

> At step one, the [c]ourt makes an initial determination on whether the named plaintiffs are similarly situated to other, potential opt-in plaintiffs. [*Clark*, 68 F.4th] at 1009. This determination is provisional; it permits the sending of court-supervised notice to potential opt-ins but it "has zero effect on the character of the underlying suit." *Id.* (citing *Genesis Healthcare [Corp. v. Symczyk]*, 569 U.S. [66,] 75, 133 S. Ct. 1523[, 185 L. Ed. 2d 636 (2013)]). At this stage, named plaintiffs must show a "strong likelihood" that they are similarly situated to the potential opt-ins. *Id.* at 1011. The strong-likelihood standard is borrowed from the test applied when implementing preliminary injunctions and "requires a showing greater than the one necessary to create a genuine issue of fact, but less than the one necessary to show a preponderance." *Id.*
>
> Step two occurs after the close of discovery and requires that the [c]ourt make a conclusive determination on whether the named plaintiffs are "in fact similarly situated" to opt-in plaintiffs. *See id.* at 1009–10. It is only after the [c]ourt conclusively determines the named plaintiffs are similarly situated to any opt-ins, that the opt-ins become parties to the suit and are permitted to proceed to trial collectively. *Id.* at 1009 (citing 29 U.S.C. § 216(b) and *Canaday [v. Anthem Companies, Inc.]*, 9 F.4th [392,] 403 [(6th Cir. 2021)]). To succeed at step two and proceed to trial or judgment as a collective, named plaintiffs must show that they are similarly situated to the opt-ins by a preponderance of the evidence. *See, e.g., id.* at 1010.

*McElwee*, 2023 WL 4423880, at *12.

The holding in *Clark*, adopting a portion of the preliminary injunction standard, is plainly stated:

> [W]e hold that, for a district court to facilitate notice of an FLSA suit to other employees, the plaintiffs must show a "strong likelihood" that those employees are similarly situated to the plaintiffs themselves.

*Clark*, 68 F.4th at 1011 (citation omitted). Yet, in his post-*Clark* brief, plaintiff argues (quoting from an earlier portion of the opinion where the circuit was delineating the possible range of

8

"potential plaintiffs") that he only has to show that others "*might* be similarly situated to the original plaintiffs." (Doc. No. 40, at 4 (quoting *Clark*, 68 F.4th at 1010).) Plaintiff accurately quotes the discussion leading up to the holding in *Clark*, but then seems to ignore the court's actual holding. This Court will not do the same.

The holding of *Clark* is that, for there to be Court-facilitated notice to potential plaintiffs, McElroy must move for such notice and, in his motion, must show a "strong likelihood" that other employees of Fresh Mark *are* "similarly situated" to him.

## III.    An Aside

Before moving on to the issue of expedited discovery, the Court feels the need to comment on a certain "blurriness" in the reasoning of *Clark* with respect to the practical application of its new standard. The *Clark* court itself identified the issue before it narrowly: "At issue here is the *showing of similarity* that is necessary for a district court *to facilitate notice of an FLSA suit* to employees who were not originally parties to the suit." *Clark*, 68 F.4th at 1007 (emphases added). There is a difference between determining before merits discovery and solely for purposes of notice, that plaintiff has shown a strong likelihood that others are similarly situated to him, from determining after merits discovery (but before a final decision on the merits) who among the opt-ins should remain a plaintiff because that person actually *is* similarly situated to the plaintiff.

The difference is subtle but important depending on the particular procedural posture one is in at any given time in the case. The critical determination at the first stage is simply whether there is a *sufficient* showing of similarity to permit notice to others (and sufficiency is defined as a "strong likelihood"). As the court in *Clark* noted, "[t]he strong likelihood standard is familiar to the district courts[.]" It may turn out, at the second stage, that the original factual finding (which *Clark* expressly identifies as "provisional") was not correct (as sometimes happens with respect to

9

facts in a preliminary injunction context) and that an employee who opted in following notice

actually turns out to be *dis*similar to plaintiff for some reason that was not readily apparent before

completion of merits discovery.

One example of this "blurriness" in the *Clark* majority (at least from a district court's

perspective) is its discussion of the relevance of an arbitration defense to the *notice* determination.

The majority rejected the plaintiff's assertion that "an arbitration defense is off-limits for purposes

of the notice determination because that defense presents 'merits questions.'" *Id*. at 1012. The

court reasoned:

> The very point of the "similarly situated" inquiry is to determine whether the merits
> of other-employee claims would be similar to the merits of the original plaintiffs'
> claims—so that collective litigation would yield "efficient resolution in one
> proceeding of common issues of law and fact arising from the same alleged
> discriminatory activity." *Hoffmann-LaRoche*, 493 U.S. at 170, 110 S. Ct. 482. Thus,
> on remand, the district court should consider the parties' evidence as to arbitration
> agreements along with all the other evidence in determining whether the plaintiffs
> have met the strong likelihood standard.

*Id*. This passage blurs the initial (that is, preliminary) "strong likelihood" determination for notice

purposes with the factual "similarly situated" merits determination made later in the case (at a time

when the defendant is free to move to dismiss any opt-in plaintiff who turns out to be dissimilar).

As a result of this blurring, it appears that the Sixth Circuit may be endorsing the inclusion

of all affirmative defenses within the contours of permissible expedited discovery to determine

whether employees are "similarly situated" for purposes of notice. Fresh Mark, in fact, makes that

argument. (*See* Doc. No. 42, at 2 ("the plain language of [*Clark*] supports discovery by both parties,

particularly with respect to . . . applicable defenses . . . .").) It seems to this Court that, rather than

leading to "efficient resolution," this broad reading of *Clark* has the potential to create satellite

litigation early on in the proceedings and threatens to further delay resolution in a time-sensitive matter.

Therefore, this Court construes the *Clark* decision somewhat more narrowly than Fresh Mark proposes. The court in *Clark* merely makes the legitimate observation that a district court can (and should) consider *all* the available evidence (from both sides) when making its initial determination for purposes of notice. The Court does not read *Clark* as broadly endorsing expedited discovery with respect to all affirmative defenses at the notice stage, but rather only permitting discovery, if necessary, related to specific defenses that may be directly relevant to the "similarly situated" inquiry. That said, as always, a district court has discretion to determine the appropriate contours of discovery (expedited or otherwise) in any given case. With that in mind, the Court now turns to the question of expedited discovery for notice purposes.

## IV.    Expedited Discovery

Both sides argue that there is a need for expedited discovery related to the element of "similarly situated" so as to determine whether Court-facilitated notice to potential plaintiffs would be appropriate.

McElroy is of the view that only *he* is entitled to expedited discovery from defendant. (Doc. No. 40, at 5.) McElroy seeks an order requiring Fresh Mark to produce the following documents:

(1) the names, dates of work, addresses, telephone numbers and email addresses for all former and current non-exempt production employees of Fresh Mark, Inc. employed between August 3, 2019 and the present ("class list");

(2) time and pay data for all former and current non-exempt production employees of Fresh Mark, Inc. employed between August 3, 2019 and the present;

(3) job descriptions and other documents showing the personal protective equipment worn for each job title of all former and current non-exempt production employees of Fresh Mark, Inc. employed between August 3, 2019 and the present; and

11

(4) all relevant policies and procedures regarding timekeeping and compensation of all former and current non-exempt production employees of Fresh Mark, Inc. employed between August 3, 2019 and the present.

(*Id*. at 5–6.)[9] After this production, McElroy would want to conduct a Rule 30(b)(6) deposition.

(*Id*. at 8.) Plaintiff anticipates that his requested discovery would take 90 days. (*Id*.)

Fresh Mark, on the other hand, argues that it must be permitted expedited discovery relevant to its defenses. (Doc. No. 42, at 2.) Fresh Mark would seek the following written discovery (within the same 3-month period proposed by McElroy):

a. Requests for Admission (and related interrogatories to the extent there are not unconditional admissions) from Plaintiff and current opt-in plaintiffs regarding, *inter alia*, plaintiffs' receipt of payment intended to compensate employees for time spent donning and doffing; union membership; and invocation of grievance/arbitration process; and

b. Requests for Production of Documents from Plaintiff and current opt-in plaintiffs including, *inter alia*, requests for documents that support or refute the plaintiffs' claims that they were not paid for all time worked.

(Doc. No. 39, at 3.) Fresh Mark also wishes to depose McElroy and at least three additional opt-in plaintiffs (including Kaleb Brouillette and Karen Cook), prior to any notice, to be able to assess both whether they are "similarly situated" and whether they can make a claim for a "willful" violation. (*Id*.) And Fresh Mark wants to file at least *five* dispositive motions: three as soon as possible (addressing: preemption of McElroy's state law claim; dismissal of Rule 23 allegations;

---

[9] This case was filed on February 22, 2022. FLSA actions are usually governed by a two-year statute of limitations unless a willful statutory violation is shown, in which case the limitations period is three years. 29 U.S.C. § 255(a). Under ordinary circumstances the statute of limitations would run from either February 22, 2020, or possibly (in the event of willfulness), February 22, 2019. In fact, those dates still apply as to the original plaintiff and the persons who have already opted in. But, as previously noted, when the parties asked to go to mediation, they entered into an agreement to toll the statute of limitations for a certain period beginning on August 3, 2022, for "all former and current non-exempt production employees of Fresh Mark, Inc. employed between August 3, 2019 and the present." (*See* Doc. No. 19-1, Tolling Agreement, at 1 and 2.) Therefore, by agreement, the parties have narrowed the potential notice group.

and dismissal of untimely opt-ins) and two more after completion of its expedited discovery (addressing: willfulness; and FLSA exemption).

The question of whether to permit discovery and, if so, when and under what limitations is not particularly clear from the majority opinion in *Clark*, which mentions discovery only rather broadly, as follows:

> If the plaintiffs in an FLSA suit move for court-approved notice to other employees, the court should waste no time in adjudicating the motion. To that end, a district court may promptly initiate discovery relevant to the motion, including if necessary by "court order." Fed. R. Civ. P. 26(d)(1).

*Clark*, 68 F.4th at 1011. This merely states the obvious—that district courts may (or may not) permit early (perhaps expedited; perhaps limited) discovery. This Court does not read *Clark* as *requiring* that early discovery (expedited or otherwise) be permitted in all cases where court-facilitated notice is (or will be) sought. Nor would it, since "[d]istrict courts have broad discretion under the rules of civil procedure to manage the discovery process and control their dockets." *Marie v. Am. Red. Cross*, 771 F.3d 344, 366 (6th Cir. 2014) (citing *Wolotsky v. Huhn*, 960 F.2d 1331, 1338 (6th Cir. 1992)).

That said, as noted by another judge of this district facing a similar FLSA discovery request, "[t]his issue comes to the Court in an unusual posture. While [p]laintiff requests an order compelling [defendant] to produce . . . documents, . . . [p]laintiff has served [no] discovery on [defendant] or otherwise formally requested those materials, and neither party has filed a motion to compel or a motion for protective order. Instead, [p]laintiff is effectively asking the Court to craft discovery requests directed to [defendant] on its own initiative." *Jones v. Ferro Corp.*, No. 1:22-cv-253, 2023 WL 4456815, at *5 (N.D. Ohio July 11, 2023).[10] The same is true here—no

---

[10] The Court notes that the parties in *Jones* consented to the exercise of jurisdiction by the assigned magistrate judge.

discovery has yet been served (though not surprisingly, given that the matter has been stayed). Even so, this Court agrees with *Jones* that *Clark* does not "requir[e] a district court to order a defendant to produce particular documents absent a formal request." *Id.*

Therefore, as in *Jones*, this Court concludes that "the appropriate procedure is for the parties to conduct a period of expedited discovery . . . during which either party may seek documents and information that the party reasonably believes is relevant to the 'similarly situated' inquiry." *Id.* A schedule for doing so shall be set according to the procedure outlined in the conclusion of this order.

Although the Court will not fashion any discovery requests on behalf of the parties, it will provide some guidance herein regarding the permissible scope of expedited discovery for notice purposes in light of *Clark*.

First, since the court in *Clark* has adopted a portion of the preliminary injunction standard in the FLSA context, it is reasonable to look to such cases for guidance as to the appropriate scope of discovery at this juncture. "When a party seeks expedited discovery and has a pending request for a preliminary injunction, courts consider whether the requested expedited discovery is narrowly tailored to address the issues raised in the preliminary injunction." *Castillo v. Whitmer*, No. 1:20-cv-751, 2020 WL 11036303, at *2 (W.D. Mich. Aug. 21, 2020) (citing *BAE Sys. Aircraft Controls, Inc. v. Eclipse Aviation Corp.*, 224 F.R.D. 581, 587 (D. Del. 2004)); *see also 5ifth Element Creative, LLC v. Kirsch*, No. 5:10-cv-255, 2010 WL 4102907, at *2 (E.D. Ky. Oct. 18, 2010) ("The party seeking the expedited discovery bears the burden of showing good cause for this departure from the usual discovery process[] [and since] expedited discovery is not the norm . . . such requests must be narrowly tailored to obtain information relevant to the determination of the preliminary injunction." (citation omitted)).

14

Here, the discovery currently proposed by both sides is clearly excessive. It is not "narrowly tailored" to the sole question of whether there is a "strong likelihood" of "substantial similarity" to McElroy and it would needlessly *further* extend these proceedings that have already been stayed for a significant period of time. Moreover, the multiplicity of preliminary motions proposed by Fresh Mark would also violate this Court's Initial Standing Order. (*See generally* Doc. No. 2, Section IX.) Therefore, the parties are advised *not* to duplicate these requests as they undergo the expedited discovery that will be permitted by this Court.

Contrary to Fresh Mark's argument that McElroy is not entitled to names and contact information of other employees (*see* Doc. No. 42 at 3–5), "[g]iven the heightened standard that the Sixth Circuit has now imposed on FLSA plaintiffs, . . . it would be unreasonable to expect [p]laintiff to satisfy that burden while at the same time denying [p]laintiff information about potential opt-in plaintiffs that could assist [p]laintiff in satisfying his burden." *Jones*, 2023 WL 4456815, at *6. But McElroy is entitled to information regarding other employees of Fresh Mark "only to the extent that such information reasonably relates to the question of whether such employees are similarly situated to [p]laintiff." *Id.*

As explained by another court in this circuit, "[n]amed plaintiffs are similarly situated to opt-ins 'when they suffer from a single, FLSA-violating policy, and when proof of that policy or of conduct in conformity with that policy proves a violation as to all the plaintiffs.'" *McElwee*, 2023 WL 4423880, at *12 (citing *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 669 (2016)). "That is, plaintiffs are similarly situated if their claims are 'unified by common theories of defendants' statutory violations, even if the proofs of these theories are inevitably individualized and distinct.'" *Id.* (quoting *O'Brien*). "Similarly situated opt-ins 'are those whose causes of action

15

accrued in approximately the same manner as those of the named plaintiff.'" *Id*. (quoting *Lewis v. Huntington Nat'l Bank*, 789 F. Supp. 2d 863, 867 (S.D. Ohio 2011)).

In *Clark*, the court noted that "[w]hether other employees are similarly situated for the purpose of joining an FLSA suit typically depends on whether they performed the same tasks and were subject to the same policies . . . as the original plaintiffs were." *Clark*, 68 F.4th at 1010. The tasks and policies about which McElroy specifically complains, that is, his "common theories of [Fresh Mark's] statutory violations[,]" *McElwee*, 2023 WL 4423880, at *12, are quite specifically delineated in paragraphs 26 and 27 of his complaint (and are even repeated in McElroy's brief now before this Court (*see* Doc. No. 40, at 2)).

In addition, contrary to McElroy's position that Fresh Mark should not be permitted any discovery at this juncture (*see* Doc. No. 40, at 5, 8), the Court agrees with the court in *Jones* that "*Clark* also expressly held that courts may consider individualized defenses . . . at the notice stage." *Jones*, 2023 WL 4456815, at *6 (citing *Clark*, 68 F.4th at 1012). Any such discovery requests directed by Fresh Mark to McElroy must "be limited to information bearing on the 'similarly situated' inquiry." *Id.*

To further assist the parties in formulating discovery requests that are "narrowly tailored" to the "similarly situated" question, the Court observes that such requests should focus on the violations alleged in the complaint (and any closely related affirmative defenses in the answer). For example, although McElroy's current request for names and contact information is too broad, plaintiff should, at the very least be entitled to learn the identity (by name and contact information, and within the requisite statute of limitations) of other employees who are (or were) required by their jobs to perform the same categories of activities delineated in paragraphs 26 and 27 of the

16

complaint as being violations of the FLSA. Fresh Mark is in the best position to know what pre- and post-shift (and lunchtime) activities are required of each employee.[11]

It may very well be that the parties will be able to reach an agreement as to the group of employees, if any, who should receive notice under the new standard in *Clark* and based on the allegations of the complaint relating to specific FLSA violations, as well as the defenses raised by defendant as possible subjects of dispositive motions. Even under the former more lenient standard, parties often jointly agreed on who should receive notice and in what form. The Court sees no reason to circumvent that possibility and holds out hope that the guidance offered by this opinion (especially as it relates to paragraphs 26 and 27 of the complaint and the motion-related defenses) will assist the parties in their joint efforts.

## V.    Equitable Tolling

The final issue raised by two of the three judges in *Clark* (but not by the majority opinion) relates to equitable tolling. In his concurrence, Judge Bush noted that "[t]he heightened standard we announce, with its concomitant discovery and requirement to litigate defenses, may significantly lengthen the period before potential plaintiffs are notified of a pending FLSA lawsuit." *Clark*, 68 F.4th at 1012 (Bush, J., concurring).[12] As a result, "[i]mplementation of the newly announced standard without consideration of tolling is likely to deplete remedies Congress

---

[11] The complaint alleges that Fresh Mark's employees engage in "processing, production, and distribution" of "specialty meat items." (Doc. No. 1 ¶¶ 13, 15.) The Court can envision, for example, that employees engaged in the actual meat processing might be required to do all the activities listed in ¶ 26, whereas other employees would not (*e.g.*, ones who load fully packed and sealed boxes on to trucks for delivery). It seems likely that not all of defendant's employees are within the scope of the allegations of the complaint.

[12] This mention of "[a] requirement to litigate defenses . . . before potential plaintiffs are notified" is another example of the blurriness previously noted by this Court. Every lawsuit presents the "requirement to litigate defenses." But specifically linking that requirement to the new "heightened standard" for notice and its potential for additional delay seems to suggest that the court in *Clark* is endorsing expedited discovery with respect to all defenses. This Court, as already discussed, views the issue slightly more narrowly. Of course, each case must be evaluated based upon its own unique circumstances.

has duly provided." *Id*. at 1013. Judge Bush concluded that "[e]quitable considerations support the use of tolling for FLSA collective actions." *Id*. at 1014. In her concurrence in part, Judge White "agree[d] with Judge Bush that, given the court's new standard, district courts should freely grant equitable tolling to would-be opt-in plaintiffs." *Id*. at 1017 (White, J., concurring in part).

As already noted, a claim under the FLSA must be "commenced within two years after the cause of action accrued, . . . except that a cause of action arising out of a willful violation may be commenced within three years[.]" 29 U.S.C. § 255(a). An action is "commenced" by a named plaintiff on the date the complaint is filed, subject to certain exceptions. 29 U.S.C. § 256. But for potential plaintiffs who may be eligible to opt in, an action commences when he or she files a written consent to join the action. 29 U.S.C. § 256(b). "As a result, the statute of limitations continues to run after the named plaintiff files suit, and the pool of timely claims continues to shrink until either all [potential plaintiffs'] claims have become time-barred or they have consented to join the suit within the limitations period." *Davis v. Colonial Freight Sys., Inc.*, No. 3:16-cv-674, 2018 WL 11225871, at *6 (E.D. Tenn. Mar. 2, 2018) (citation omitted).

The doctrine of equitable tolling "permits courts to extend the statute of limitations on a case-by-case basis to prevent inequity." *Baden-Winterwood v. Life Time Fitness*, 484 F. Supp. 2d 822, 826 (S.D. Ohio 2007) (citing *Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998)). "[T]he equitable tolling doctrine is read into every federal statute." *Id*. (citing *U.S. v. $57,960.00 in U.S. Currency*, 58 F. Supp. 2d 660, 664 (D.S.C. 1999) (citing *Holmberg v. Armbrecht*, 327 U.S. 392, 297, 66 S. Ct. 582, 90 L. Ed. 743 (1946))).[13] Even though the FLSA's opt-in mechanism

---

[13] "[A] nonjurisdictional federal statute of limitations is normally subject to a 'rebuttable presumption' in favor 'of equitable tolling.'" *Holland v. Florida*, 560 U.S. 631, 645–46, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 95–96, 111 S. Ct. 453, 112 L. Ed. 2d 435 (1990)). The Sixth Circuit has held that the statute of limitations period that applies to FLSA actions is not jurisdictional. *Ott v. Midland–Ross*

"necessarily involves some lapse of time between the date [an] action is commenced and the date that each opt-in plaintiff files his or her consent form," the Act did not limit a court's "equitable power to toll the FLSA's statute of limitations." *Id*.

Typically, "equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Struck v. PNC Bank N.A.*, 931 F. Supp. 2d 842, 846 (S.D. Ohio 2013) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 561–62 (6th Cir. 2000) (citing *Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151, 104 S. Ct. 1723, 80 L. Ed. 2d 196 (1984))).

McElroy argues that equitable tolling of the statute of limitations should be granted for all potential plaintiffs until court-approved notice is sent. (Doc. No. 40, at 10.)

Fresh Mark opposes any tolling other than what the parties jointly agreed to at the time they sought a stay of proceedings in order to engage in mediation. (Doc. No. 42, at 7–8.) In particular, Fresh Mark claims that "[t]here is no basis to revive any individuals' claims that lapsed prior to the parties' tolling agreement, which [p]laintiff appears to acknowledge by changing the scope of the putative collective action to omit the individuals whose claims had already lapsed in his second motion for conditional certification[.]" (*Id*. at 8.) Fresh Mark further argues that *Clark* caused no delay in this case and should not be the basis for any further tolling. (*Id.*)

As is well-recognized, since the statute of limitations is an affirmative defense, it can be waived by a defendant (either by inaction or, as here, by agreement). The tolling agreement that the parties entered into in connection with their agreement to mediate states that the tolling period would begin on August 3, 2022 (the effective date of the agreement) and end the day after this

---

*Corp.*, 523 F.2d 1367, 1370 (6th Cir. 1975) (holding that 29 U.S.C. § 255 "establishes only a procedural limitation period"). There is nothing in the majority opinion in *Clark* that would change any of this.

Court lifted the stay for potential opt-in plaintiffs employed "between August 3, 2019 and the present." (Doc. No. 19-1, at 2.) As already noted, the stay was never formally lifted, but the Court's previous order said the stay would end at the "completion of mediation." As also noted, Fresh Mark's brief selects as the ending date the day that McElroy filed his second motion for conditional certification, that is, March 23, 2023. (*See* Doc. No. 42, at 8.) But the Court concludes that, under the terms of the parties' own tolling agreement, the ending date should be March 11, 2023, the day after the mediation report would have been due (had one been filed), *i.e.*, the day after the "completion of mediation." Therefore, the tolling period under the parties' tolling agreement is August 3, 2022 through March 11, 2023, inclusive—or 221 days.

To be clear, the tolling agreement *also* contains the following provision:

> **Limitations on Defenses:** With respect to any putative class member who has not yet opted-in to the Lawsuit and whose time for doing so has not expired as of the Effective Date of this Agreement [August 3, 2022], Fresh Mark shall not assert, plead, or rely upon any statute of limitations, laches, or other time-based defense to any wage claim under the FLSA and the OMFWSA [Ohio Minimum Fair Wage Standards Oct] asserted by any putative class member seeking to opt in to the Lawsuit. Nothing in this Agreement shall affect any defense available to Fresh Mark as of the Effective Date of this Agreement or be deemed to revive any claim that is already time barred as of the Effective Date of this Agreement.

(Doc. No. 19-1, at 1.) Although as explained below, this Court has no jurisdiction to rule at this juncture with respect to additional equitable tolling of the claims of potential plaintiffs who have not yet opted in, to the extent they may already fall under this explicit provision of the tolling agreement, the agreement would control.

McElroy wants more than the tolling agreement provides. He asserts that this case has been pending for 16 months (as of the date of his brief) and, despite two timely motions for conditional certification, no notice has issued. He asks for tolling for all potential plaintiffs through the date that notice issues.

This Court rejects as premature McElroy's request for any additional tolling because it agrees with the reasoning of *Jones v. Ferro Corp.*, *supra*, which noted that "[c]ourts are divided on whether it is appropriate for a court to equitably toll the statute of limitations for potential opt-in plaintiffs in an FLSA case before those employees actually opt in." *Jones*, 2023 WL 4456815, at *7 (collecting cases reflecting the opposite holdings). The court in *Jones* ultimately agreed that a ruling on equitable tolling with respect to all potential opt-in plaintiffs would be premature because it is a determination that "must be considered on a case-by-case basis." *Id*. Further, the court in *Jones* "question[ed] whether [p]laintiff has standing to seek equitable tolling on behalf of absent class members." *Id*. The court noted that, "while two members of the *Clark* panel stated that equitable tolling should be available in FLSA actions, neither indicated that a court should address the issue prior to the notice determination." *Id*. As a result, the court in *Jones* denied plaintiff's request for equitable tolling without prejudice, stating that "[i]f notice is ultimately provided to potential opt-in plaintiffs, any opt-in plaintiffs whose claims may otherwise be time-barred may move for equitable tolling at that time." *Id*.

This Court agrees that a determination on equitable tolling for persons not yet parties to the lawsuit is premature. None of the cases that discuss the *principles* underlying equitable tolling discuss the *timing* of that determination. This Court is persuaded that well-recognized principles of jurisdiction and standing are always applicable. Therefore, until this Court has jurisdiction over a particular party who has opted in, any ruling on additional equitable tolling with respect to such party's claims would be a prohibited advisory ruling. Further, the ten plaintiffs who are currently parties to this case (and whose statute of limitations has, in fact, been tolled by their joining the case) have no standing to raise the issue on behalf of *potential* plaintiffs because, as pointed out by the court in *Clark*, this FLSA action "is not representative[.]" *Clark*, 68 F.4th at 1009.

21

That said, the Court reiterates that, to the extent any potential plaintiff who has not yet opted in is already covered by the terms of the tolling agreement discussed above, that agreement controls. Further, in recognition of the delay that will result from expedited discovery, which will be permitted here on the question of "similarly situated," the Court advises the parties that, following such discovery, the Court will entertain a motion for an additional 90 days of equitable tolling, provided such motion is filed no later than 14 days after the expiration of the opt-in deadline. Whether that additional 90 days will be applicable for particular plaintiff(s), will be decided at that time.

## VI.    Conclusion

In light of the above, the Court will conduct a telephonic Case Management Conference with counsel on August 24, 2023 at 10:00 a.m. to discuss a case management schedule. Directions for dialing in to the conference will be sent by email no later than one day before the conference.

The parties shall confer and shall file a Report of Parties' Planning Meeting (in the form attached to this order) by August 21, 2023, including proposed dates and deadlines for the relevant case management events, plus any additional matters for the Court's attention.

The Court urges the parties to agree on the question of whether Court-facilitated notice to potential plaintiffs is warranted and, if so, to supply relevant deadlines (as indicated in the form Report). During the Case Management Conference, depending on whether there is agreement as to notice, the Court may also set case management dates and deadlines for general fact discovery (including discovery of any electronically-stored information); expert discovery (if any) (including deadlines for parties to file burden-of-proof and rebuttal reports and to complete all expert discovery); briefing, for good cause shown, on any preliminary, potentially case-narrowing motions other than ordinary summary judgment motions; briefing on summary judgment motions

22

(including motions to dismiss any opt-in plaintiff(s)); and all court appearances (including status conference(s), the final pretrial conference, and the date for a jury trial), all to be fully completed and the case closed by March 28, 2025.

As always, the Court encourages the parties to consider resolving this case through settlement and, in such event, the parties should promptly notify the Court.

**IT IS SO ORDERED**.

Dated: August 1, 2023

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT COURT**
**CHIEF JUDGE**