**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ANTOINE MCELROY, on behalf of himself and all others similarly situated, | ) ) | CASE NO.: 5:22-cv-287 |
| | ) | JUDGE SARA LIOI |
| Plaintiff, | ) ) | |
| vs. | ) ) | |
| FRESH MARK, INC., | ) ) ) | **JOINT MOTION FOR APPROVAL OF SETTLEMENT AND STIPULATION OF DISMISSAL WITH** |
| Defendant. | ) ) | **PREJUDICE** |

## I.  INTRODUCTION

Plaintiff Antoine McElroy and Defendant Fresh Mark, Inc. ("Defendant" or "Fresh Mark") (collectively "Parties") respectfully move this Court to approve the proposed FLSA Opt-in Settlement reached by the Parties and memorialized in the Settlement Agreement and Release ("Agreement") attached as Exhibit A.

The proposed settlement will resolve bona fide disputes involving overtime and other compensation claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as Ohio wage-and-hour statutes.  Plaintiff asserted that Defendant unlawfully failed pay its non-exempt employees, including Plaintiff and other similarly situated employees, for all hours worked, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219 and the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. 4111.03.  Defendant denies Plaintiff's allegations, including any purported liability arising therefrom.

If approved by the Court, the Agreement will provide for the issuance of notice to all Eligible Settlement Participants[1] within 40 days of approval by this Court through a Third-Party Settlement Administrator, and no later than 30 days after receipt of the Settlement Class List from Defendant.  Eligible Settlement Participants will have forty-five days to join the Settlement by executing and returning Consent and Release Forms to the Third-Party Settlement Administrator. Because the proposed Settlement is an FLSA *opt-in* settlement, as opposed to a Rule 23 *opt-out* settlement that would bind absent class members, no fairness hearing is required or requested by the Parties.[2]

The Parties respectfully submit that the proposed Settlement is fair and reasonable and satisfies the criteria for approval under § 216(b) of the FLSA.  The Agreement was achieved during arms-length negotiations among the Parties, conducted by experienced counsel and with the assistance of a highly respected mediator, after three (3) separate mediations, and reached on August 30, 2023.  If approved by the Court, the Agreement will make settlement payments available to the Eligible Settlement Participants who elect to participate in the settlement, and thus become Settlement Class Members.

The settlement documents submitted for approval or entry by the Court consist of the following:

Exhibit A:     Joint Stipulation of Settlement and Release

---

[1] All defined terms not explicitly defined herein shall have the meaning ascribed to them in the Agreement.

[2] *See Moore v. Ackerman Inv. Co*., C 07-3058-MWB, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, 607CV1680ORL28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same); *Barnes v. Benzerenterprises, Inc.*, 607CV1754-ORL-22DAB, 2008 WL 4059839, (M.D. Fla. Aug. 27, 2008) ("the Court determines that there is no need for a fairness hearing").

Exhibit B:    Notice of Settlement of Lawsuit, with attached Consent and Release Form entitled Consent to Opt-Into Lawsuit, Release, and Dismiss Claims

Exhibit C:    Order of Dismissal and Approving Settlement

Exhibit D:    Declaration of Counsel Chastity L. Christy

Exhibit D1:    Simpluris Quote

The following sections explain the nature of the Action, the negotiations, the principal terms of the Agreement, and the propriety of approving the Agreement and its proposed distributions of settlement proceeds.

## II.    <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

### A.    <u>The Action</u>

On February 22, 2022, Plaintiff Antoine McElroy initiated this action against Defendant Fresh Mark, Inc. as a result of Defendant's alleged practices and policies of not paying its non-exempt employees, including Plaintiff and other similarly-situated employees, for all hours worked, including overtime compensation at the rate of one and one-half times their regular rates of pay for all of the hours they worked over 40 each workweek, in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, as well as a "class action" pursuant to Fed. R. Civ. P. 23 to remedy violations of the Ohio Minimum Fair Wage Standards Act ("OMFWSA"), R.C. § 4111.03.  Plaintiff alleges that Defendant only paid him and similarly situated production employees for work performed between their scheduled shift start and stop times.

On May 24, 2022, this Court held a telephonic Case Management Conference.  Following the Case Management Conference, this Court docketed an Order setting the dates for briefing on Conditional Certification and staying discovery until after the Motion for Conditional Certification is resolved.  (See Minute Order 5-24-22.)

Pursuant to the deadlines requested by the Parties and accepted and ordered by this Court,

Plaintiff filed his Motion for Conditional Certification on June 17, 2022 (Doc. 16); Defendant filed its Opposition Brief on July 18, 2022 (Doc. 17); and Plaintiff filed his Reply Brief on August 1, 2022 (Doc. 18).

Following complete briefing on Conditional Certification, the Parties filed a Stipulation Requesting Referral to Mediation and Stay of Proceedings (Doc. 19), with attached Tolling Agreement (Doc. 19-1).  This Court granted the Motion and referred this matter to Mediation. (Doc. 20.)

Following the scheduled Mediation, the Parties' and mediator continued settlement discussions and requested additional time to complete a further mediation.  On January 10, 2023, following receipt of the Mediator's report, this Court ordered, among other things, the clerk to terminate Plaintiff's pending Motion for Conditional Certification and for Plaintiff to re-file the motion by March 13, 2023.  (Doc. 31.)  As a result of the limited availability of the mediator, the Parties' filed a Joint Motion Requesting Continuance of Mediation Completion Date and Attendant Deadlines on February 8, 2023, and the Parties agreed to deadlines for briefing conditional certification.  (Doc. 32.)  On February 13, 2023, the Court granted the Joint Motion and ordered deadlines for the Parties to complete conditional certification. (Doc. 33.)

Pursuant to the Court's Order, Plaintiff re-filed his Motion for Conditional Certification, Expedited Opt-In Discovery, and Court-Supervised Notice to Potential Opt-In Plaintiffs on March 23, 2023.

On May 20, 2023, the Court issued an Order suspending and terminating Plaintiff's renewed Motion for Conditional Certification and ordered the Parties to file simultaneous briefs indicating how *Holder, et al. v. A&L Homecare & Training Center, LLC, et al.,* Case Nos. 22-3101/3102 would impact this case.

On June 5, 2023, the Parties filed their respective briefs regarding the impact of the *Holder*

decision.  (Doc. Nos. 39 and 40.)  On June 15, 2023, the Parties filed their respective response briefs regarding the impact of the Holder decision.  (Doc. Nos. 42 and 43.)  On August 1, 2023, this Honorable Court issued its Memorandum Opinion and Order regarding the impact of the *Holder* decision.  (Doc. No. 45.)  Prior to the scheduled hearing as set forth in the Court's Docket No. 45, the Parties submitted to the Court a joint status report indicating that they had scheduled a third day of mediation on August 30, 2023.  The Court vacated the pending case management conference in light of this mediation session.  During the August 30, 2023, mediation, the Parties were able to reach agreement on the terms of settlement, as reflected in this Motion and the supporting documents filed concurrently herewith.

### B. <u>Negotiation of The Agreement</u>

Between April 2022 and August 2023, the Parties engaged in an informal yet comprehensive exchange of information regarding Plaintiff's claims and Defendant's defenses to such claims.  (Ex. D, Christy Declaration, ¶ 18.)  This included the calculations of Plaintiff's, Current Opt-Ins Plaintiff's, and a 20% random sampling the Eligible Settlement Participants' alleged potential overtime and other damages.  (*Id.*)

The Parties engaged in extensive legal discussion and correspondence, which included numerous and lengthy discussions, Zoom conferences, and written communications over that last 1.5 years.  (*Id*. at ¶ 19.)  Between December 22, 2022, and August 30, 2023, the Parties engaged in extensive settlement negotiations. (*Id*. at ¶ 20.)   On December 22, 2022, the Parties attended a full day of mediation with mediator Jerome F. Weiss, but the matter did not settle.  (*Id*.)  The Parties attended a second full day of mediation with Mr. Weiss on March 10, 2023, after the Parties exchanged additional information, data, and documents.  (*Id*.)  While the matter did not settle at either of the previous mediations, Mr. Weiss continued to engage in ongoing settlement discussions between the Parties from March 2023 through August 30, 2023.  (*Id*.)  On August 30,

2023, the Parties attended a final mediation session with Mr. Weiss, during which they reached an agreement to settle the Action on the terms set forth in the Agreement attached as Exhibit A.  (*Id.* at ¶ 21.)  The Parties reached the proposed settlement in this matter after extensive research, legal debates, discussions, and correspondence, and after good faith bargaining with the assistance of a well-respected and regarded mediator who is familiar with wage-and-hour laws.  (*Id.*)

### C.     **The Agreement Terms**

If approved by the Court, the Agreement will cover Plaintiff, the Current Opt-In Plaintiffs, and all of the Eligible Settlement Participants who elect to participate in the Agreement by signing and returning Consent and Release Forms ("Settlement Class Members").  The Eligible Settlement Participants consist of 7,516 additional individuals (in addition to the Representative Plaintiff and Current Opt-In Plaintiffs).

The Maximum Eligible Settlement Amount is Three Million Seven Hundred Twenty-Five Thousand Dollars ($3,725,000.00), which sum will cover: (a) all of the potential Individual Payments to the Settlement Class Members and the actual payments to Settlement Class Members; (b) Representative Plaintiff's Representative Payment; (c) Class Counsel's attorneys' fees and expenses; and (d) the cost of settlement administration through a Third-Party Settlement Administrator jointly chosen by the Parties.

Two Million Four Hundred Six Thousand Seven Hundred Seventy-Eight Dollars and Eighty-Four Cents ($2,406,778.84) of the Maximum Eligible Settlement Amount will be divided into Individual Payments to Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants.  The Individual Payments will be calculated proportionally as to each Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants weeks worked during the Calculation Period, which will be a proxy for their proportional unpaid wages.  The Individual Payments will be determined by a Third-Party Settlement Administrator.  Any Individual Payments to Eligible Settlement

Participants who do not execute and return Consent and Release Forms will be retained by Defendant.

Twenty Thousand ($20,000.00) of the Maximum Eligible Settlement Amount will be paid to Representative Plaintiff Antoine McElroy, in addition to his Individual Payment, for his service as the Representative Plaintiff and for executing a general release of claims. In addition, $1,241,666.66 of the Maximum Eligible Settlement Amount will be paid to Class Counsel for attorneys' fees and $8,054.50 in expenses incurred prior to the Settlement in prosecuting these claims, including the Plaintiff's share of the cost of the mediator, which was $6,393.75. (Ex. D, ¶ 48.) Finally, the Parties agreed that Simpluris would be designated as the Third-Party Administrator, and the quoted cost for such administration is $45,500.00. (*Id.* at ¶ 49; Ex. D1, Simpluris Quote.)

In exchange, the Action will be dismissed, and the Settlement Class Members will release Defendant from all federal and state wage-and-hour claims, rights, demands, liabilities and causes of action asserted in Plaintiff's Complaint, including but not limited to claims for unpaid wages, unpaid overtime and other compensation, liquidated damages, interest, attorneys' fees, and expenses, pursuant to the Fair Labor Standards Act and the Ohio Minimum Fair Wage Standards Act, for the Released Period.

To inform the Eligible Settlement Participants of the Settlement, the Parties have submitted, as Exhibit B, the proposed Notice of Settlement of Lawsuit, with an attached Consent and Release Form. The Notice will be mailed to the Eligible Settlement Participants at their last known home addresses according to records maintained by Defendant, and any updated addresses obtained by the Settlement Administrator. Plaintiff, the Opt-in Plaintiffs, and the Eligible Settlement Participants who sign and return Consent Forms (the "Settlement Class Members") will participate in the Settlement and their claims will be released.

III.  **THE PROPRIETY OF APPROVAL**

The proposed Agreement is subject to approval by the Court pursuant to § 216(b) of the FLSA.  As shown in the attached Declaration of Class Counsel Chastity L. Christy, and as explained below, Court approval is warranted on all scores.

A.  **The Seven-Factor Standard Is Satisfied**

The court presiding over an FLSA action may approve a proposed settlement of the action under the FLSA § 16(b) "after scrutinizing the settlement for fairness."  *Landsberg v. Acton Enterprises, Inc.*, 2008 WL 2468868 at *1 n.1 (S.D. Ohio June 16, 2008) (quoting *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353-55 (11th Cir. 1982) (the court should determine whether the settlement is "a fair and reasonable resolution of a bona fide dispute") (citing *Schulte, Inc. v. Gangi*, 328 U.S. 108, 66 S. Ct. 925, 928 n.8 (1946)).

As a district court in the Sixth Circuit has observed, "[t]he need for the court to ensure that any settlement of [an FLSA] action treats the plaintiffs fairly is similar to the need for a court to determine that any class-action settlement is 'fair, reasonable, and adequate.'"  *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499, at *3 (E.D. Ky. Oct. 23, 2008).  The Sixth Circuit uses seven factors to evaluate class action settlements, and the *Crawford* court applied those factors in assessing the fairness of an FLSA settlement:

> (1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest.

*UAW v. General Motors Corp.*, 497 F.3d 615, 626 (6th Cir. 2007) (citing *Granada Invs., Inc. v. DWG Corp.*, 962 F.2d 1203, 1205 (6th Cir.1992); *Williams v. Vukovich*, 720 F.2d 909, 922-23 (6th Cir.1983)), *quoted in Crawford*, 2008 WL 4724499 at *3.  As shown below and in the Christy, Declaration (*see* Exhibit D), the standard supports approval of the Settlement.

### 1)      No Indicia of Fraud or Collusion Exists

The Parties' counsel each have extensive experience litigating claims under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201-219, including claims for unpaid hours worked. The Agreement was achieved only after more than eight (8) months of arms-length and good faith negotiations between the Parties, with the assistance of a qualified and well-respected mediator, and after three (3) separate mediation sessions. As such, there is no indicia of fraud or collusion.

### 2)      The Complexity, Expense and Likely Duration of Continued Litigation Favor Approval

The policy favoring the settlement of class actions and other complex cases applies with particular force here. Employment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming. While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA. Defendant claims that even if Plaintiffs could succeed on the merits (which it contends they could not), Plaintiffs cannot prove a willful violation of the law, and thus, no wages would be owed for the third year of the three-year limitations period. In addition, the Parties disagree as to whether Plaintiffs could recover liquidated damages under the FLSA.

The Parties have already litigated this matter for over one (1) year and seven (7) months. If forced to litigate this case further, the Parties would certainly engage in complex, costly and protracted wrangling. (Ex. D, ¶ 37.) The Parties would be required to engage in extensive briefing regarding: (1) whether notice would be issued to the class; (2) whether Plaintiff's state law claims are preempted by the federal Labor Management Relations Act; (3) whether Plaintiff's state law claims should be dismissed following the passage of SB 47; (4) whether Defendant's alleged unlawful actions were willful; (5) whether certain of Plaintiff's claims should be dismissed due to

the existence of collective bargaining agreements; (5) Rule 23 Class Certification; and (6) summary judgment. (*Id.*) Discovery would be expensive and time consuming given the continued factual and legal disputes between the Parties and the potential for up to 7,525 class members in the litigation. (*Id.* at ¶ 38.) Moreover, the Parties continue to dispute the scope of first phase discovery relating to whether a class of similarly situated employees exist for purposes of administering court-ordered notice. (*Id.*) There is no question that this case would continue to be litigated for years, including through possible appeals. (*Id.*) The Agreement, on the other hand, provides substantial relief to Representative Plaintiff, Current Opt-in Plaintiffs, and the Eligible Settlement Participants who choose to timely execute and return Consent and Release forms, promptly and efficiently, and amplifies the benefits of that relief through the economies of collective resolution.

### 3) Investigation Was Sufficient to Allow the Parties to Act Intelligently

The Parties engaged in substantial investigation prior to negotiating the Settlement Agreement. Relevant information was exchanged, including an analysis of the potential alleged overtime and other compensatory damages with respect to the claims alleged in the lawsuit. (Ex. D, ¶¶ 17, 23.) Class Counsel obtained and reviewed detailed time and payroll data relating to Plaintiff, Opt-In Plaintiffs, and a representative sample of the Eligible Settlement Participants. (*Id.* at ¶18.) Furthermore, throughout mediation and settlement discussions, Defendant provided additional data relating to the number of workweeks of all Eligible Settlement Participants. The legal issues in the case have been thoroughly researched and vehemently argued by counsel for the Parties. (*Id.* at ¶ 25.) In addition, Class Counsel obtained investigation notes and declarations from Representative Plaintiff and numerous other employees who are members of the proposed settlement class. (*Id.* at ¶ 23.) All aspects of the dispute are well understood, and were vehemently argued, by both sides for one (1) year and seven (7) months. (*Id.* at ¶ 25.)

### 4)    The Risks of Litigation Favor Approval

"The likelihood of success . . . provides a gauge from which the benefits of the settlement must be measured." *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1086 (6th Cir. 1984). Given the factual and legal complexity of this matter, it is difficult to assess Plaintiff's likelihood of success at trial.  Plaintiffs' claims are based on disputed issues of fact and law and Plaintiffs' success at trial is far from guaranteed.  In sum, although Plaintiffs assert that the collective and class claims are meritorious, the action certainly is not without risk.  This factor thus weighs in favor of approval.

Counsel for both sides believe in the merits of their clients' positions, but nonetheless recognize that the litigation of claims is uncertain in terms of duration, cost, and result.  Moreover, in the present case, Defendant raises affirmative defenses to Plaintiff's claims, and the outcome of those defenses is uncertain as well.  Continued litigation would be risky for all and at each stage, including certification, decertification, summary judgment, and trial.

The number of individuals who could have received Notice of this lawsuit continued to dwindle by the day with the statute of limitations running.  (Ex. D at ¶ 33.)  There was no guarantee that this Honorable Court would have ordered the Notice be issued to individuals whom Plaintiff claims are similarly situated to him.  (*Id.*)  Defendant has argued extensively that its non-exempt production employees are not all similarly situated to one another.  (*Id.*)  Defendant argued that at each of their four (4) facilities it employed non-exempt workers in numerous positions, many of whom did not engage directly with food, and that they reported to over 100 different supervisors. (Doc. 17, PAGEID 132.)  Defendant also argued that some of the employees were responsible for maintenance of machinery, sanitation, shipping, food storage, and that their job duties and working conditions varied.  (*Id.)*  Further, Defendant argued that the various departments followed different sanitation procedures and different policies and procedures regarding personal protective

equipment.  (*Id.*)

Additionally, Defendant argued that at each of its four (4) facilities its employees were members of separate unions and subject to varying terms of different collective bargaining agreements.  (*Id.*)  Finally, Defendant argued that in 2010 it conducted time studies relating to the time employees spend donning and doffing personal protective equipment, washing and drying their hands, and walking from the locker rooms to their respective work areas.  (*Id.* at PAGE ID 133.)  Defendant claimed that as a result of the study and with the various Union's agreement, it added additional time, ranging from 7 to 10 minutes each shift, depending on the facility, to employees' time records for such pre-shift work.  (*Id.*)  As a result, Defendant denied that Plaintiff and non-exempt production employees were owed any additional overtime or other compensation for pre-shift work.   Further, Defendant argued that the terms of the collective bargaining agreements and other agreements with the Unions precluded Plaintiff's claims.  (Ex. D, ¶ 34.)

During this litigation, Defendant has further argued:  (1) the Labor Management Relations Act precludes and serves as a complete defense to Plaintiff's claims; (2) individual facts relating to the various facilities, positions, departments, unions, collective bargaining agreements, and policies and procedures would preclude a finding of similarly situated; and (3) that there would be no facts supporting "willfulness" and that it had a good faith defense, which would preclude liquidated damages, because Defendant performed a study in 2010 and the unions approved the method of compensating for the time spent on pre-shift work alleged in this lawsuit.  (Ex. D, ¶ 36.)

Plaintiff risked this Court not permitting the issuance of Notice, which would preclude Eligible Settlement Participants from being given the opportunity to opt-in to this litigation. (*Id.* at ¶ 39.)   Under the terms of the Settlement, 7,516 individuals who may not have been given an opportunity to participate in the litigation will be given an opportunity to participate in the Settlement.  (*Id.*)   Additionally, since there is no further and current tolling of the statute of

limitations in this matter, the claims of all Eligible Settlement Participants were diminishing daily, and some of them could have expired entirely before Notice was even issued.  (*Id*.)  The Settlement permits individuals employed between January 22, 2020, through December 31, 2022, to participate in obtaining additional overtime and other compensation damages.  (*Id*.)  As such, the claims of Eligible Settlement Participants are no longer at risk.  (*Id*.)

Further, Plaintiff risked this Court dismissing Plaintiff's and Opt-In Plaintiffs' claims pursuant to Section 301 of the Labor Management Relations Action.  (*Id*. at ¶ 40.)  Had this Court dismissed Plaintiff's claims, none of the 7,525 potential Settlement Class Members would receive any additional overtime and other compensation. (*Id*.)

Even if Plaintiff succeed on the merits of his claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.  (*Id*. at ¶ 41.)  Even if Plaintiff was to succeed on the merits, there is the possibility that this Court or a jury would find that he and other similarly situated employees were entitled to less overtime and other compensation than was obtained in this Settlement.  (*Id.*)  This Court or a jury could also find that Defendant's alleged violations were not willful, and thus a two (2) year statute of limitations would apply.  (*Id.*)  The Settlement permits recovery of more than three (3) years for Plaintiff Opt-In Plaintiffs with a Calculation Period from February 22, 2019, to December 31, 2022, and an almost three (3) year Calculation Period (from January 22, 2020, through December 31, 2022) for Eligible Settlement Participants.  Finally, a jury could find that Defendant acted in good faith, and thus no liquidated damages would not be awarded.  (*Id*.)  All of these scenarios would result in a monetary award of less than the amount obtained through this settlement. (*Id*.)

As such, Plaintiff's and Opt-In Plaintiffs' risks were extensive had litigation continued. (*Id*. at ¶ 42.)  Moreover, Eligible Settlement Participants' risks were even more extensive as there was no guarantee that they would even be permitted to receive Notice of this lawsuit. (*Id*.)

### 5)     Counsel and Class Representative Favor The Agreement

Class Members' range of possible recovery is also open to extraordinary dispute.  Even if Plaintiffs succeeded on the merits of their claims, the amount of recovery is uncertain and something upon which the Parties continue to disagree.

The endorsement of experienced class counsel "is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).  Here, Class Counsel believes the settlement is fair, reasonable, and adequate.  (*See* Ex. D, ¶ 44.)  Class Counsel has extensive experience in wage-and-hour class and collective actions, has acted in good faith, and has vigorously represented their clients in negotiating the settlement.  (See Exhibit D.)  Representative Plaintiff has been fully informed and involved in the settlement process, including attending mediations, and agrees to the Settlement. *Thacker v. Chesapeake Appalachia, L.L.C.*, 695 F. Supp. 2d 521, 533 (E.D. Ky. 2010), *aff'd sub nom. Poplar Creek Dev. Co. v. Chesapeake Appalachia, L.L.C.*, 636 F.3d 235 (6th Cir. 2011).

### 6)     The Reaction of Absent Class Members

The absence of Class Member objections indicates that the Class supports the settlement. *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498-99 (E.D. Mich. 2008) (small number of opt-out requests indicative of the adequacy of the settlement). In the present case, there are no objections by class members.  Each Class Member has the option of opting into this matter or not.  The Eligible Settlement Participants are not bound by the settlement unless they affirmatively opt-in and return the Consent and Release Form.  As such, any members who choose not to participate are free to do so without taking any action on their part.

### 7)   Settlement is in the Public Interest

"[T]he law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981). The settlement ends complex litigation that has been pending for over one (1) year and (7) months and provides substantial relief to Settlement Class Members and avoids protracted, costly litigation. *See Brotherton*, 141 F. Supp. 2d at 905-06. The terms of the settlement are equitable and provide a reasonable resolution of the action. As detailed above, the risks of continued litigation were significant. Continued litigation would serve to increase the attorneys' fees and costs, with no guarantee of a larger verdict in favor of Plaintiffs and Eligible Settlement Participants. In fact, rulings by this Court or a verdict by a jury could result in the dismissal of certain claims and/or less of a recovery for Plaintiffs and Eligible Settlement Participants if this Court or a jury were to rule in favor of Defendant on certain disputed issues of fact and law. Given the risks involved in continued litigations, as well as the costs, attorney time, and Court time that would be expended with continued litigation, this settlement is in the public interest.

### B.    The Settlement Distributions Are Fair, Reasonable and Adequate

As a part of the scrutiny it applies to an FLSA collective action settlement, "a court must ensure that the distribution of the settlement proceeds is equitable." *Crawford v. Lexington-Fayette Urban County Government*, 2008 WL 4724499 (E.D. Ky. Oct. 23, 2008) (citing *Ortiz v. Fibreboard Corp.,* 527 U.S. 815, 855 (1999). All components of the proposed distribution are proper and reasonable, and the settlement as a whole is fair, reasonable, and adequate for Representative Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants.

As shown above, the seven-factor standard supports approval of the Settlement. The parties' counsel have extensive experience litigating FLSA claims and there is no fraud or collusion. (See Exhibit D.) The expense and likely duration of continued litigation favor approval,

in that wage-and-hour cases for groups of employees are always expensive and time-consuming. (*Id.* at ¶ 57.) While formal discovery has yet to be commenced, the Parties have engaged in substantial investigation prior to and during the negotiations, and the issues are well understood by both sides. (*See* Ex. D.) The outcome is uncertain for Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants, and the risks of continued litigation are evident for both sides. (*Id.* at ¶ 57.) The opinions of experienced counsel of the parties support the Settlement, as does the Representative Plaintiff.

All Individual Payments will be calculated proportionally on each Class Member's weeks worked during the Calculation Period, which is a logical proxy for their alleged unpaid compensation. The Calculation Period for Eligible Settle Participants shall be the period between January 22, 2020, and December 31, 2022. (*Id*. at ¶ 41.) The Calculation Period for Plaintiff and Opt-In Plaintiffs shall be the period between February 22, 2019, and December 31, 2022, as they opted into this matter at the time of the filing of the Complaint. (*Id*.)

If approved by the Court, the Proposed Settlement will provide adequate payments to the Class Members for alleged unpaid overtime and other compensation. The Individual Payments will be calculated by the Settlement Administrator as a pro rata share of the Net Settlement Fund based upon the Settlement Class Members' total workweeks in which they performed work in a Covered Job Position during applicable time frame. To determine the value for each Workweek, the Settlement Administrator will divide the Net Settlement Fund by the total number of Workweeks worked by Plaintiff, Opt-In Plaintiffs, and all Eligible Settlement Participants. That dollar amount equals the weekly recovery value ("Weekly Recovery") for each Workweek. Next, for Plaintiff, each Opt-in Plaintiff and each Eligible Settlement Participant, the Settlement Administrator shall compute the Plaintiff, Opt-in plaintiff and Eligible Settlement Participant's Individual Payment by multiplying the Plaintiff, respective Opt-in Plaintiff, or respective Eligible

Settlement Participant's total Workweeks by the Weekly Recovery.  Defendant represents that there 600 workweeks worked by Plaintiff and Opt-In Plaintiffs between February 22, 2019, and December 31, 2022, and that there are 261,574 workweeks worked by Eligible Settlement Participants between January 22, 2020, and December 31, 2022.

The Parties calculated potential damages to the Eligible Settlement Class Members by looking at the difference between the employees' punch time when they arrived and left the workplace, as recorded by the Company's time clocks, and the actual time paid, which was often based on scheduled time plus additional time for as agreed by the Unions and the Company for donning, doffing and related activities.[3]  Using this most Plaintiff friendly calculation method, between the period of January 22, 2020, and December 31, 2022, the Settlement Class Members allegedly were denied a maximum of approximately $4.27M using a three year statute of limitations or $2,825,178, using a two year statute of limitations.  Pursuant to the Agreement, $2,406,778.84 of the Maximum Eligible Settlement Amount will be available to Plaintiff, Opt-In Plaintiffs, and 7,516 Eligible Settlement Participants, *after* attorneys' fees and costs, the cost of settlement administration, and a service award to Representative Plaintiff. And, the weekly recovery for employees slightly exceeds one half-hour of additional pay per week, based on average wage rates during the applicable time period.

---

[3] The Parties agree that this is the most generous method of calculating potential damages, as Fresh Mark was and is under no obligation to pay employees based on timeclock punch-in and punch-out records, where employees do not perform work between clocking in and the start of their scheduled shift time.  Further, there was no allegation in the Complaint that Defendant's rounding methods for time-keeping and pay purposes was in violation of the FLSA or Ohio law. Moreover, Plaintiff does not claim that he should have been paid based off of his punch time. Since Defendant paid Plaintiff and similarly situated employees additional time for donning and doffing during their employment, and pursuant to the various collective bargaining agreements, the Parties determined that they would use the clock-in to clock-out time for purposes of negotiating a settlement.

Accordingly, the settlement proceeds are fair, reasonable, and adequate.

**C.**      **The Requested Service Award Should Be Approved.**

The Settlement contemplates providing a $20,000 Service Award to Representative Plaintiff Antoine McElroy. Service awards to a representative plaintiff recognizing the value of his or her services on behalf of other participants are proper. As stated in *In re Dunn & Bradstreet Credit Services Customer Litigation*, 130 F.R.D. 366 (S.D. Ohio 1990):

> Numerous courts have not hesitated to grant incentive awards to representative plaintiffs who have been able to effect substantial relief for classes they represent.

130 F.R.D. at 373 (citing *Wolfson v. Riley*, 94 F.R.D. 243 (N.D. Ohio 1981); *Bogosian v. Gulf Oil Corp.*, 621 F. Supp. 27, 32 (E.D. Pa. 1985); *In re Minolta Camera Products Antitrust Litigation*, 666 F. Supp. 750, 752 (D. Md. 1987)).

In this Circuit, service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997).

Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances." *Dun & Bradstreet*, 130 F.R.D. at 374 (citing *In re Jackson Lockdown/MCO Cases*, 107 F.R.D. 703, 710 (E.D. Mich. 1985)). *See also Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 250 (S.D. Ohio 1991) (among the factors warranting incentive awards are the "time and effort spent" by the individuals in question and "whether these actions resulted in a substantial benefit to Class Members").

In the present case, Class Counsel Chastity Christy's Declaration (*see* Exhibit D) establishes that the proposed Service Award is proper and reasonable. (*Id*. at ¶ 46.) Representative

Plaintiff's services were extensive and effective.  (*Id*.)  He provided extensive factual information to Class Counsel and faithfully engaged in numerous and extensive calls, meetings, and other communications with Class Counsel over the course of one (1) year and seven (7) months.  (*Id*.)  He attended and/or participated in three (3) separate mediations, which resulted in him missing work.  (*Id*.)  Moreover, he subjected himself to the responsibilities of serving as a named Plaintiff in a lawsuit against his former employer.  (*Id*.)

The requested payment is proportional to service payments awarded to plaintiffs in other FLSA actions.  *See Grayer, et al. v. Kennametal Inc.,* N.D. Ohio Case No. 1:16-cv-01382 (Boyko, C, Nov. 27, 2019)(awarding $20,000 to each representative plaintiff in total settlement of $1,812,500.00); *Whitlock v. Sevier Cnty., Tennessee*, No. 3:18-CV-233, 2020 WL 12894415, at *2 (E.D. Tenn. Dec. 21, 2020)($20,000 service payment in $900,000 settlement); *Johnson v. Midwest Logistics Sys., Ltd.,* 2013 WL 2295880, at *5 (S.D. Ohio May 24, 2013) (awarding $12,500 service award in $452,380.00 settlement); *Swigart v. Fifth Third Bank*, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) (awarding $10,000 service payments to each class representative); *Myres v. Hopebridge, LLC*, No. 2:20-CV-5390, 2023 WL 2399056, at *3 (S.D. Ohio Feb. 21, 2023)($7,500.00 in service awards to each representative plaintiff in $300,000 settlement); *O'Bryant v. ABC Phones of N. Carolina, Inc*., No. 2:19-CV-02378, 2020 WL 4493157, at *3 (W.D. Tenn. Aug. 4, 2020)($10,000 service awards given to each representative plaintiff in $1,715,888 settlement); *Salinas v. U.S. Xpress Enterprises, Inc*., No. 1:13-CV-245, 2018 WL 1475610, at *1 (E.D. Tenn. Mar. 26, 2018)($10,000 service award in $2,200,000 settlement); *Koszyk v. Country Fin.*, 2016 WL 5109196, at *6-7 (N.D. Ill. Sept. 16, 2016) (approving $10,000 service payments for each of seven plaintiffs in $2,825,000 settlement.)

### D.     Class Counsel's Fees and Expenses Are Proper and Reasonable

The FLSA provides that a Court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and the costs of the action."  29 U.S.C. § 216(b).

The attorney's fees provision of the FLSA exists to enable plaintiffs to employ reasonably competent lawyers without cost to themselves if they prevail, and thereby to help ensure enforcement of the substantive provisions of the Act. 29 U.S.C. §216(b).  In *Fegley v. Higgins,* 19 F.3d 1126, 1134 (6th Cir. 1994), *cert. denied,* 513 U.S. 875 (1994), the Sixth Circuit held that the FLSA's mandatory attorneys' fee provision "insure[s] effective access to the judicial process by providing attorney fees for prevailing plaintiffs with wage and hour grievances," and thus "encourage[s] the vindication of congressionally identified policies and rights."  *Fegley,* 19 F.3d at 1134 (quoting *United Slate, Tile & Composition Roofers, Damp and Waterproof Workers Ass'n, Local 307 v. G & M Roofing and Sheet Metal Co.,* 732 F.2d 495, 502 (6th Cir.1984)).

There are two methods for determining whether a fee is reasonable: the lodestar method and the percentage-of-the-fund method. *Van Horn v. Nationwide Prop. & Cas. Ins. Co.*, 436 F. App' 496, 498 (6th Cir. 2011).

In Ohio, the preferred method is to award a reasonable percentage of the fund.  *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, 2017 WL 5247538, at *5 (S.D. Ohio Nov. 13, 2017) (quotations and citation omitted).   The Court in *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *7 (S.D. Ohio July 11, 2014) noted:

> An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See, e.g., Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritze*r, 2012 WL 1945144, at *9–10 (awarding attorney's fees and costs up to $235,000 out of a settlement of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action

for unpaid overtime)).

In the instant action, Plaintiff requests that the Court award fees in the amount of one-third of the Maximum Settlement Amount.  "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC,* No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (one-third of the fund "is a normal fee amount in a wage and hour case.")[4] The Ohio practice is in accord with the practice throughout the Sixth Circuit and nationwide.[5]

---

[4]    *See also Osman, et al. v. Grube, Inc., et al.* 2018 WL 2095172, at *5 (N.D. Ohio May 4, 2018) (awarding one-third of the fund); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *3 (N.D. Ohio June 15, 2010); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-CV-1694, 2010 WL 776933, at *1 (N.D. Ohio Mar. 8, 2010) (approving one-third of fund where there was a recovery constituting one-third of claimed unpaid wages; litigation risks and significant work expended; and a contingency arrangement); *Kritzer v. Safelite Sols.*, LLC, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) (awarding 52 percent of maximum settlement fund to counsel in wage and hour case); *Swigart v. Fifth Third Bank*, No. 1:11-CV-88, 2014 WL 3447947, at *6 (S.D. Ohio July 11, 2014) (awarding 33 percent of $4 million settlement fund in wage and hour case); *Moore v. Aerotek, Inc.*, 2017 WL 2838148, at *6 (S.D. Ohio June 30, 2017), report and recommendation adopted, No. 2017 WL 3142403 (S.D. Ohio July 25, 2017) ("Fee awards in common fund cases generally are calculated as a percentage of the fund created, with the percentages awarded typically ranging from 20 to 50 percent of the common fund created."); *Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*, No. 1:16-CV-448, 2017 WL 5247538, at *5-6 (S.D. Ohio Nov. 13, 2017) (awarding one-third of $450,000 fund).

[5]    In *Bessey v. Packerland Plainwell, Inc*. 2007 WL 3173972 (W.D. Mich. 2007), the district court approved a one-third attorneys' fee in an FLSA settlement much like the one presented here. Fulfilling *Fegley*'s emphasis on "encourage[ing] the vindication of congressionally identified policies and rights," the *Bessey* court found "the percentage of fund method is the proper method in this case for compensating plaintiffs' counsel.  The fact that the damages which could have been claimed by each class member were relatively modest provides a strong reason for adopting the percentage of recovery method, for it rewards counsel for taking on a case which might not otherwise be economically feasible."  *Bessey*, 2007 WL 3173972, at *4 (citing *Rawlings v. Prudential Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993) (the district court "must make sure that [class] counsel is fairly compensated for the amount of work done as well as for the results achieved" and "the percentage of the fund method more accurately reflects the results achieved"). *Accord, In re Revco Securities Litigation*, Fed. Sec. L. Rptr. ¶ 96,956, at 94,069 (N.D. Ohio 1993) ("'[t]he percentage of the fund approach… provides a fair and equitable means of determining attorney's fees'" because "'the size of a common fund is an objective yardstick by which the benefit conferred upon the class can be measured'").

The Sixth Circuit considers the following factors in determining whether the requested fee is reasonable: (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services; (3) whether the services were undertaken on a contingent-fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides. *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing, among others, *Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188, 1196 (6th Cir. 1974)). Each of these factors weighs strongly in favor of the reasonableness of the requested fee.

As stated extensively above, the risks to Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants were significant. Instead of the risks of continued litigation, the Individual Settlement Payments provide Settlement Class Members with a payout of compensation based on the number of workweeks worked during the relevant time period, which is well above the average recovery in FLSA lawsuits, and provides employees with approximately an additional half-hour of pay per week worked during the relevant time period, using a damages calculation method most generous to employees. The attorneys' fees requested are reasonable in light of the benefit achieved for Plaintiff and the Opt-In Plaintiffs.

In determining the reasonableness of a fee award, the *Bessey* court considered the comparative data about class settlements summarized in *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942 (E.D. Tex. 2000), *discussed in Bessey*, 2007 WL 3173972, at *4:

> The most complete analysis of fee awards in class actions conducted to date was conducted by the National Economic Research Associates, an economics consulting firm. The data is reported at Frederick C. Dunbar, Todd S. Foster, Vinita M. Juneja, Denise N. Martin, Recent Trends III: What Explains Settlements in Shareholder Class Actions? (NERA, June 1995) (hereinafter "NERA Study").

*Shaw*, 91 F. Supp. 2d at 988 (citing NERA Study at 7 & Exh. 12) (emphasis added).

The NERA Study relied upon in *Shaw* and *Bessey* showed the average result achieved for class members was only 7% to 11% of claimed damages.  Measured against that standard, the settlement in the present Settlement is comparable.  The allocation to the Plaintiffs represents a fair a reasonable method of calculating the pro rata share due to each individual Settlement Class Participant, based on the amount of time worked during the time period at issue, ***after*** deduction of the service award to Plaintiff, attorneys' fees, and litigation reimbursements to Counsel.

There is no doubt that "society certainly has an interest in incentivizing attorneys to assist in combatting illegal nonpayment of wages." *Castillo*, 2015 WL 13021899, at *6 (Marbley, J.) (citing *Fegley v. Higgins*, 19 F.3d 1126, 1134-35 (6th Cir. 1994)). Plaintiffs' counsel took on this matter to represent Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants in their alleged overtime and other compensation claims against Defendant and litigated for one (1) year and seven (7) months against experienced Defendant's Counsel. This factor supports awarding the requested fees to encourage qualified attorneys to represent employees in claims for unpaid wages.

Plaintiff's Counsel undertook the representation on a purely contingent-fee basis.  (Ex. D, ¶ 51.)  Thus, Counsel has borne all of the risk that accompanies contingent-fee representation, including the prospect – very real in this case – that the investment of substantial attorney time and resources would be lost.  *Id*.  Counsel should be compensated for this risk.  *Lonardo v. Travelers Indem. Co.*, 706 F. Supp. 2d 766, 796 (N.D. Ohio 2010); *see also Crosby v. Bowarter Inc. Ret. Plan*, 262 F. Supp. 2d 804, 814 (W.D. Mich. 2003) ("contingency serves to justify the higher fee"). "There is a public interest in ensuring that attorneys willing to represent clients in class action litigation are adequately paid so that they and others like them will continue to take on such cases." *Connectivity Sys. Inc. v. Nat'l City Bank*, 2011 WL 292008, at *14 (S.D. Ohio Jan. 25, 2011).

Had this case not settled, Plaintiffs' Counsel would have vigorously litigated the case

without any promise of success and compensation. (Ex. D at ¶ 52.) At every step of the litigation, Defendant could have succeeded. Therefore, Plaintiffs were at great risk for non-payment. (*Id.*) This risk of non-payment strongly supports the amount requested here.

"Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming." *Swigart,* 2014 WL 3447947, at *7 (citation omitted). The parties faced complex motion practice on collective treatment, preclusion issues, dismissal of claims, and summary judgment.

As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." Manual for Complex Litigation (4th) § 14.121.

Plaintiff's Counsel's Declaration contains information that demonstrates the reasonableness of the proposed fees and expenses. (*See* Exhibit D.) Plaintiffs' Counsel has worked diligently in representing Representative Plaintiff, Opt-In Plaintiffs, and Eligible Settlement Participants with respect to the claims and settlement of this matter, including attending three (3) mediations and engaging in countless telephone calls with the mediator in an attempt to obtain the settlement. (*Id.* at ¶¶ 20-21.) Prior to filing the Lawsuit, Plaintiff's Counsel performed a significant amount of research and factual investigation of the claims to set forth a factually specific Complaint for the Court and Defendant. (Ex. D at ¶ 23.) This included interviewing and obtaining declarations from numerous putative class members. (*Id*.) Plaintiff's Counsel reviewed and analyzed time and pay records for Plaintiff, Opt-In Plaintiffs, and a representative sample of the Eligible Opt-In Plaintiffs, and performed significant calculations over the course of the eight (8) months the parties have been attempting to resolve this matter. (*Id*.)

During the pendency of this case, it was contentiously litigated, as this Court is aware.

The Parties engaged in substantial informal discovery and significant motion practice, and it was anticipated that they would engage in ever further significant motion practice as discussed above. (*Id.* at ¶¶ 24, 33-40; See Docket.)  Further, the Parties engaged in disputes relating to the scope of discovery relating to motion practice for purposes of whether notice should be issued.  (*Id.* at ¶ 38.)

The litigation expenses sought to be reimbursed are proper and reasonable. Plaintiffs' Counsel has incurred expenses in the amount of $8,054.50 prior to the Settlement in prosecuting these claims, including the Plaintiff's share of the cost of the mediator, which was $6,393.75.  (*Id.* at ¶ 48.)  All expenses were incurred during the course of the litigation of this Action. (*Id.*)

Finally, the Parties agreed that Simpluris would be designated as the Third-Party Administrator, and the quoted cost for such administration is $45,500.00.  (*Id.* at ¶ 49; Ex.  D1, Simpluris Quote.)

The expenses incurred are reasonable and their reimbursement should be approved. *Swigart*, 2014 WL 3447947, at *7 (reimbursing $39,406.46 in out-of-pocket litigation expenses that "were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.").

## IV.  CONCLUSION

For the reasons addressed above, the Parties respectfully request that this Court approve the Agreement by entering the proposed Order of Dismissal and Approving Settlement attached as Exhibit C.

Respectfully submitted,

 /s/ *Chastity L. Christy*
Chastity L. Christy (0076977)
Anthony J. Lazzaro (0077962)
The Lazzaro Law Firm, LLC
The Heritage Building, Suite 250
34555 Chagrin Boulevard
Moreland Hills, Ohio 44022
Phone: 216-696-5000
Fax: 216-696-7005
anthony@lazzarolawfirm.com
chastity@lazzarolawfirm.com

Attorneys for Plaintiff Antoine McElroy
and Opt-In Plaintiffs

*/s/ Paula M. Weber*
PAULA M. WEBER (admitted *pro hac vice*)
ANDREA R. MILANO (admitted *pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111-5998
Phone: 415-983-1000
Fax: 415-983-1200
paula.weber@pillsburylaw.com
andrea.milano@pillsburylaw.com

David J. Kaufman (0078197)
John R. Cernelich (0034697)
Abbey Kinson Brown (0092629)
Calfee, Halter & Griswold LLP
The Calfee Building
1405 East Sixth Street
Cleveland, Ohio 44114
Phone: 216-622-8200
Fax:  216-241-0816
dkaufman@calfee.com
jcernelich@calfee.com
abrown@calfee.com

Attorneys for Defendant Fresh Mark, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2023, a copy of the foregoing was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access the filing through the Court's system.

 /s/ Chastity L. Christy
One of the Attorneys for Plaintiff