# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ANTOINE MCELROY, on behalf of himself and others similarly situated, | ) ) ) ) | CASE NO. 5:22-cv-287 |
| PLAINTIFF, | ) ) ) | JUDGE SARA LIOI |
| v. | ) ) ) | **MEMORANDUM OPINION AND ORDER** |
| FRESH MARK, INC., | ) ) ) | |
| DEFENDANT. | ) ) | |

Before the Court is the parties' joint motion for approval of settlement and dismissal of the case (Doc. No. 51 (Motion)), supported by the Notice of Settlement (Doc. No. 51-2) and the Declaration of Chastity L. Christy (Doc. No. 51-4 (Christy Declaration)). Also appended to the motion is the parties' stipulation of settlement and release. (Doc. No. 51-1 (Settlement Agreement).) Because the Court finds that the settlement represents a fair and reasonable resolution of plaintiffs' claim under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, the joint motion is granted, the settlement is approved as explained more fully below, and the case is dismissed with prejudice.

## I.    BACKGROUND

On February 22, 2022, Plaintiff Antione McElroy ("McElroy") initiated this action against Defendant Fresh Mark, Inc. ("Fresh Mark") alleging that Fresh Mark did not pay McElroy and other alleged similarly situated employees[1] overtime for all the hours they worked in excess of 40

---

[1] McElroy brought a collective action under the FLSA and a class action under Fed. R. Civ. P. 23. (*See generally* Doc. No. 1 (Complaint).) In the months between the filing of the complaint and this order, the Sixth Circuit issued its opinion in *Clark v. A&L Homecare and Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023). The Sixth Circuit in *Clark* clarified that potential plaintiffs to an FLSA collective action differ from putative class members in important respects,

hours per week. (Doc. No. 51, at 3[2]; Doc. No. 1 (Complaint).) Fresh Mark denied the allegations and raised a number of affirmative defenses. (Doc. No. 51, at 1; Doc. No. 6 (Answer).)

The Court scheduled the matter for a case management conference ("CMC"). (*See* Doc. No. 8. (CMC Scheduling Order).) On May 24, 2022, the Court conducted a telephonic CMC with counsel, wherein the Court discussed with counsel the results of the parties' informal settlement discussions and the need for briefing on the issue of conditional certification. (Minute Order [non-document], 5/24/2022.) The Court set dates for conditional certification briefing and stayed formal discovery. (*Id.*)

On June 17, 2022, McElroy filed a motion for conditional certification. (Doc. No. 16 (Motion).) After briefing on the issue of conditional certification, the parties filed a motion requesting referral to mediation, and the Court granted the motion and referred the matter to mediation. (Doc. No. 51, at 4.) Following the scheduled mediation, the parties and the mediator continued settlement discussions and requested additional time to complete another mediation. (*Id.*) As a result, the Court ordered the clerk to terminate McElroy's pending motion for conditional certification and McElroy to re-file the motion. (*Id.*) Due to the mediator's limited availability, the parties filed a joint motion requesting continuance of the mediation completion date and attendant deadlines. (*Id.*) The Court granted the motion. (*Id.*)

---

and it cautioned against using the terms interchangeably. *Clark*, 68 F.4th at 1009–11. The Settlement Agreement, and this order, apply to McElroy and the opt-in plaintiffs as outlined below. Because the settlement only applies to opt-in and potential opt-in plaintiffs, as opposed to opt-out class members, there is no need for a fairness hearing. *See Moore v. Ackerman Inv. Co.*, No. 07-3058, 2009 WL 2848858 (N.D. Iowa Sept. 1, 2009) ("Section 216(b) does not expressly require a 'fairness' hearing on a proposed settlement, as Rule 23 of the Federal Rules of Civil Procedure does for class actions pursuant to that rule, and Rule 23 requirements are not directly applicable to a collective action pursuant to § 216(b)."); *McLean v. HSM Elec. Prot. Services, Inc.*, No. 607-cv-1680-Orl-28DAB, 2008 WL 4642270 (M.D. Fla. Oct. 8, 2008) (same).

[2] All page number references herein are to the consecutive page numbers applied to each individual document by the Court's electronic docketing system.

Pursuant to the Court's order, McElroy re-filed his motion for conditional certification, expedited opt-in discovery, and court-supervised notice to potential opt-in plaintiffs. (*Id.*) On May 20, 2023, the Court suspended and terminated the renewed motion for conditional certification and ordered the parties to file simultaneous briefs regarding the impact of *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003 (6th Cir. 2023) on this case. (*Id.*) On August 1, 2023, the Court issued a memorandum opinion and order addressing this case in light of *Clark*. (*Id.* at 5.)

Between April 2022 and August 2023, the parties engaged in an informal exchange of information regarding McElroy's claims and Fresh Mark's defenses, including a calculation of the alleged potential overtime and other damages for McElroy, the opt-in plaintiffs at the time, and a twenty percent random sampling of the eligible settlement participants. (*Id.*) Between December 22, 2022 and August 30, 2023, the parties engaged in settlement negotiations with an experienced mediator who is familiar with wage-and-hour laws. On December 22, 2022 and March 10, 2022, the parties attended two full days of mediation with mediator. (*Id.*) After these unsuccessful mediations, the mediator continued to engage the parties and they continued to exchange additional information, data, and documents. A third mediation with the mediator was held on August 30, 2023, at which the parties reached a settlement agreement (*id.* at 5–6), and on October 13, 2023, they filed the instant motion for approval of the settlement.

## II.    APPLICABLE LAW

"Employees are guaranteed certain rights by the FLSA, and public policy requires that these rights not be compromised by settlement." *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, No. 06-299-JBC, 2008 WL 4724499, at *2 (E.D. Ky. Oct. 23, 2008). "The central purpose of the FLSA is to protect covered employees against labor conditions 'detrimental to the

maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers.'" *Id.* (quoting 29 U.S.C. § 202) (further citation omitted).

The provisions of the FLSA are mandatory and, except in two narrow circumstances, are generally not subject to bargaining, waiver, or modification by contract or settlement. *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706, 65 S. Ct. 895, 89 L. Ed. 1296 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 (11th Cir. 1982). The first exception involves FLSA claims that are supervised by the Secretary of Labor pursuant to 29 U.S.C. § 216(c). *Lynn's Foods*, 679 F.2d at 1353. The second exception, applicable here, encompasses instances where a federal district court approves the settlement of a suit brought pursuant to § 216(b) of the FLSA. *Id.*

In reviewing the settlement of a plaintiff's FLSA claims, the district court must "'ensure that the parties are not, via settlement of [the] claims, negotiating around the clear FLSA requirements of compensation for all hours worked, minimum wages, maximum hours, and overtime.'" *Rotuna v. W. Customer Mgmt. Grp. LLC*, No. 4:09CV1608, 2010 WL 2490989, at *5 (N.D. Ohio June 15, 2010) (quoting *Collins v. Sanderson Farms, Inc.*, 568 F. Supp. 2d 714, 719 (E.D. La. 2000) (further citation omitted)). The existence of a bona fide dispute serves as a guarantee that the parties have not manipulated the settlement process to permit the employer to avoid its obligations under the FLSA. *Id.* (citing *Crawford*, 2008 WL 4724499, at *3). The Court should also consider the following factors: the risk of fraud or collusion; the complexity, expense, and likely duration of the litigation; the amount of discovery completed; the likelihood of success on the merits; and, the public interest in settlement. *Crawford*, 2008 WL 4724499, at *3 (citing *Int'l Union, United Auto., Aerospace, and Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). Where the settlement agreement proposes an award of attorney's fees, such fees must be reasonable. *See generally Reed v. Rhodes*, 179 F.3d 453, 471

4

(6th Cir. 1999) (citing *Blum v. Stenson*, 465 U.S. 886, 893, 104 S. Ct. 1541, 79 L. Ed. 2d 891 (1984)).

## III.    ANALYSIS

At the outset, the Court finds that the divergent views of the facts and the law presented a bona fide dispute that, had the parties not reached settlement, would have necessitated resolution by the Court and/or a jury. The parties' motion confirms the same. (*See generally* Doc. No. 51.) In particular, the parties disagreed regarding whether Fresh Mark unlawfully failed to pay its non-exempt employees for all hours worked (*id.* at 1), whether the two-year limitations period for non-willful violations or the three-year limitations period for willful violations applied under the FLSA (*id.* at 9), and whether the plaintiffs could recover liquidated damages under the FLSA. (*Id.*)

There is no indicia of fraud or collusion in this case where the parties and their respective counsel, each of whom have considerable experience litigating FLSA claims, worked extensively with an experienced mediator and achieved a settlement only after more than eight months of arms-length and good faith negotiations.

Also, as the parties have indicated, the case was complex, and proceeding further would be costly and time-consuming. As it is, before reaching a settlement, the parties litigated this matter for over one year and seven months. Further litigation would likely have required the parties to engage in extensive briefing regarding a number of issues, including issues relating to class certification, preemption, the effects of collective bargaining agreements on some of the claims, the scope of discovery, and whether a class of similarly situated employees exist for purposes of administering court-ordered notice. (*Id*. at 9–10.)

The parties represent that they engaged in substantial investigation and exchanged relevant information, including an analysis of the potential alleged overtime and other compensatory damages with respect to the alleged claims. (*Id*. at 10.)

The Court has taken into account the opinion of counsel in this action, who has expressed the opinion that the proposed settlement is in the best interests of the plaintiffs and potential plaintiffs and is "fair, adequate and reasonable." (Doc. No. 51-4 ¶¶ 27–28.)

Furthermore, the lack of class member objections indicates that the class members support the settlement. *See Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-cv-1119, 2011 WL 292008, at *6 (S.D. Ohio Jan. 26, 2011); *In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 498–99 (E.D. Mich. 2008).

Given the uncertainty and risks surrounding each stage of the litigation, including certification, decertification, summary judgment, and a possible trial, the certainty and finality that comes with settlement also weighs in favor of a ruling approving the agreement. Likewise, such a ruling promotes the public's interest in encouraging settlement of litigation. *See Crawford,* 2008 WL 4724499, at *9.

While the Court is not in a position to assess the likelihood of success on the merits, the Court finds that the other relevant factors weigh in favor of approving the settlement.

The settlement agreement provides for several forms of relief. The Court will discuss each in turn.

**A.  Payments to Potential Plaintiffs**

The maximum eligible settlement amount is $3,725,000.00, which will cover "(a) all of the potential Individual Payments to the Settlement Class Members and the actual payments to Settlement Class Members; (b) Representative Plaintiff's Representative Payment; (c) Class

Counsel's attorneys' fees and expenses; and (d) the cost of settlement administration through a Third-Party Settlement Administrator jointly chosen by the Parties." (Doc. No. 51, at 6.) There are 7,516 potential plaintiffs. (*Id.*)

The settlement provides that $2,406,778.84 of the maximum eligible settlement amount (after attorney's fees and costs, the cost of settlement administration, and a service award to McElroy) will be divided into payments to McElroy, the opt-in plaintiffs, and eligible settlement participants, which will be calculated proportionally as to their weeks worked during the calculation period. (*Id.*) Using the parties' calculation method (which the parties agree is the most generous method of calculating potential damages), the settlement class members were denied a maximum of approximately $4,270,000.00 using a three-year statute of limitations, or $2,825,178.00 using a two-year statute of limitations. (*Id.* at 17.)[3] Thus, the opt-in plaintiffs will recover approximately fifty-six percent of the amount they are owed using a three-year statute of limitations, or approximately eighty-five percent of the amount they are owed using a two-year statute of limitations.

The Court agrees with class counsel that this is a fair and adequate compromise of the disputed claims. (*See* Doc. No. 51-4 ¶¶ 27–28.)

## B. Service Award

The settlement also provides that $20,000.00 of the maximum eligible settlement about will be paid to McElroy, in addition to his individual payment, for his service as the representative plaintiff and for executing a general release of claims. (Doc. No. 51, at 7.) Such awards are common, and "courts routinely approve incentive awards to compensate named plaintiffs for the

---

[3] "While the Parties agreed that the two-year statute of limitations applied under Ohio law, they disagreed whether the two-year limitations period for non-willful violations or three-year limitations period for willful violations applied under the FLSA." (Doc. No. 51, at 9.)

services they provided and the risks they incurred during the course of the class action litigation." *Cullen v. Whitman Med. Corp.,* 197 F.R.D. 136, 145 (E.D. Pa. 2000) (internal citation omitted); *see, e.g.*, *Grayer, et al. v. Kennametal Inc.*, No. 1:16-cv-01382 (N.D. Ohio Nov. 27, 2019) (awarding $20,000 to each representative plaintiff in total settlement of $1,812,500.00); *Whitlock v. Sevier Cnty., Tennessee*, No. 3:18-cv-233, 2020 WL 12894415, at *2 (E.D. Tenn. Dec. 21, 2020) ($20,000 service payment in $900,000 settlement). Service awards to representative plaintiffs are "typically justified when named plaintiffs expend more time and effort beyond that of other class members in assisting class counsel with litigation, such as by actively reviewing case and advising counsel in prosecution of case." *In re Southern Ohio Correctional Facility*, 175 F.R.D. 270, 273, 276 (S.D. Ohio 1997). Courts recognize that "differentiation among class representatives based upon the role each played may be proper in given circumstances."  *In re Dun & Bradstreet Credit Serv. Customer Litig.,* 130 F.R.D. 366, 374 (S.D. Ohio 1990).

McElroy participated in calls, meetings, and communications with counsel over the course of one year and seven months. (Doc. No. 51-4 ¶ 46.) He also attended three mediation sessions, for which he missed work. (*Id.*) Therefore, he expended sufficient effort to justify the service award the settlement provides.

### C. Attorney's Fees and Expenses

Additionally, the settlement provides for attorney's fees in the amount of $1,241,666.66, which is roughly one-third of the maximum settlement amount. (Doc. No. 54, at 21.) "In FLSA collective actions in Ohio, courts have almost uniformly awarded attorney's fees that constituted one-third of the fund." *Carr v. Bob Evans Farms, Inc.*, No. 1:17-CV-1875, 2018 WL 7508650, at *4 (N.D. Ohio July 27, 2018); *Brandenburg v. Cousin Vinny's Pizza, LLC*, No. 3:16-CV-516, 2019 WL 6310376, at *5 (S.D. Ohio Nov. 25, 2019) (indicating that one-third of the fund "is a normal

fee amount in a wage and hour case"). Counsel in this case participated in several mediation sessions and extended settlement discussions (*see* Doc. No. 51, at 4–6) and were required to complete briefing regarding the changes in the law that occurred during this case in *Clark* (*id.* at 4). Additionally, plaintiffs' counsel undertook the representation on a contingent-fee basis, thus bearing the risk of losing substantial time and resources. (Doc. No. 51-4 ¶ 51.) Without a settlement, plaintiffs faced a risk of not recovering at all in the event that the Court did not permit the issuance of notice, the claims of eligible settlement participants expired, or the Court dismissed their claims pursuant to Section 301 of the Labor Management Relations Act. (*Id.* ¶¶ 39–40; *see also* Doc. No. 51, at 11–13.) Furthermore, even if plaintiffs had prevailed on the merits at trial, the amount they would have recovered is highly uncertain. (Doc. No. 51–4 ¶ 41; *see also* Doc. No. 51, at 13.)

The Court finds that the award of attorney's fees to plaintiffs' counsel, which is supported by the declarations filed by counsel, is reasonable, taking into consideration the course of proceedings and the successful outcome providing substantial relief to McElroy and other potential plaintiffs to this action.[4]

### D. Settlement Administrator Award

Finally, the Settlement Agreement provides for an award of $45,500.00 for the cost of settlement administration through a third-party settlement administrator. (Doc. No. 51, at 7.) The Joint Stipulation of Settlement and Release (Doc. No. 51-1 (Joint Stipulation) ¶ 39) details the settlement administrator's responsibilities in facilitating individual payments.

---

[4] The Settlement Agreement also provides for plaintiffs' counsel to receive $8,054.50 in expenses. (Doc. No. 51, at 7.) These expenses include the plaintiffs' share of the cost of the mediator, which was $6,393.75. (*Id.*) Plaintiffs' counsel certifies that all of these expenses "were incurred in the course of this action for the purpose of preserving, proving, and presenting the claims of Representative Plaintiff, Opt-In Plaintiffs, and the Eligible Settlement Participants." (Doc. No. 51-4 ¶ 48.) Given this information, the Court finds that these expenses are reasonable.

The Court also approves the appointment of Simpluris as settlement administrator (Doc. No. 51, at 7), which shall perform the duties set forth in the Settlement Agreement pursuant to the continuing jurisdiction of the Court. The Court orders that the Net Settlement Fund will be created, established and maintained as a Qualified Settlement Fund pursuant to 26 U.S.C. § 468B and its regulations subject to the continuing jurisdiction of the Court.

## IV.    CONCLUSION

For the foregoing reasons, the Court approves the parties' joint motion for approval of settlement (Doc. No. 51). Accordingly, and pursuant to the parties' settlement, the Court:

(1) Approves the settlement documents attached to the Joint Motion as Exhibits A-B, and orders that the settlement be implemented according to the terms and conditions of the Agreement and as directed herein;

(2) Approves the service award to representative plaintiff Antoine McElroy in recognition of his service in the action, and orders that such payment be made in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement;

(3) Approves the payment of attorney's fees and expense reimbursements to plaintiffs' counsel as provided in the Settlement Agreement, and orders that such payments be distributed in the manner, and subject to the terms and conditions, set forth in the Settlement Agreement;

(4) Approves the appointment of Simpluris as the settlement administrator and the disbursement of costs associated with the settlement administration; and

(5) Dismisses the claims of the representative plaintiff, opt-in plaintiffs, and eligible settlement participants who elect to participate in the Settlement Agreement by signing

and returning a consent and release form and enters final judgment dismissing them from the action.

The Court retains jurisdiction over this action to enforce the terms of the Settlement Agreement.

**IT IS SO ORDERED**.

Dated: October 30, 2023

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**